of son and father as detailed by the evidence in this case.

*Judgment for appellee.*

HORNBECK, P. J., and BARNES, J., concur.

BREMNER, APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLANT.

(Decided August 26, 1938.)

*Messrs. Bostwick & Bostwick,* for appellee.

*Mr. Herbert S. Duffy,* attorney general, and *Mr. Paul Hergenroeder,* for appellant.

CARTER, J. This cause is before this court on an appeal on questions of law. On trial to the court and jury, the jury returned a verdict in favor of the claimant. Motion for new trial filed, overruled and judgment entered upon the verdict. The operative facts are not in dispute and are substantially as follows:

On and for sometime prior to the 29th day of January, 1935, the plaintiff and her husband were employed by the Montville Citizens Telephone Association in the operation of a telephone switchboard. The switchboard was located in one of the rooms of a house, which building was owned by the association. Plaintiff and her husband were each paid a monthly salary and, in addition, were allowed to live in the house where the telephone switchboard was located. The husband acted in the capacity of manager. According to the terms of their employment, they were to take care of operating the switchboard twenty-four hours each day. However, the hours of active operation at the switchboard were a matter of arrangement between themselves. Usually about six o'clock in the morning the claimant or her husband would actively take charge of the switchboard, and it appears that it was the custom or practice, which had extended over some years, for the one who took charge of the switchboard in the morning to eat breakfast at the switchboard.

On the 29th day of January, 1935, claimant assumed active charge of the switchboard about six o'clock in the morning. About eight o'clock she left the switchboard momentarily to obtain a bottle of milk from the porch adjoining the next room. The milk was to be used with her cereal for breakfast which she was going to eat at the switchboard. Her husband was not operating the switchboard on this particular morning but was out of doors and she was operating it alone. The porch was icy, and when plaintiff stepped on it to obtain the bottle of milk she slipped, fell and was injured. She filed her application for compensation with the Industrial Commission of Ohio, which application was denied. After rehearing, the commission found that it was without jurisdiction for the reason that claimant's injuries were not sustained in the course of and arising out of her employment.

It is the claim of the commission that the court erred

in overruling the motion of the defendant for a directed verdict in its favor at the close of the evidence, as claimant was not in the course of her employment at the time of the alleged injury, as she did not sustain an injury arising out of and in the course of her employment within the meaning of the Workmen's Compensation Law, and as she was not entitled to participate in the State Insurance Fund. It is also claimed that there was error in the admission of evidence offered on behalf of the claimant and that the judgment is against the manifest weight of the evidence and is not sustained by sufficient evidence.

It is the contention of the claimant that the act being performed at the time she received her injury was an act incidental to her employment and that the injury was sustained in the course of and arose out of her employment.

Was the defendant entitled to a directed verdict at the conclusion of all the evidence? Was this injury compensable under the Ohio Workmen's Compensation Act? If so, then the verdict of the jury and the judgment rendered thereon were not erroneous on that ground.

In numerous cases the courts have held that an injury, in order to be compensable, must be sustained in the performance of some act, or in the discharge of some duty in the service of the employer; that the injury must be accidental and occur not only in the course of, but result from or arise out of the employment; that there must be a causal connection between the employment and the injury. This appears to be the settled law of Ohio. See *Verkamp* v. *Industrial Commission,* 19 N. P. (N. S.), 62, 27 O. D. (N. P.), 166; *Industrial Commission* v. *Lewis,* 125 Ohio St., 296, 181 N. E., 136; *Industrial Commission* v. *Ahern,* 119 Ohio St., 41, 162 N. E., 272; *Industrial Commission* v. *Bateman,* 126 Ohio St., 279, 185 N. E., 50; *Highway Oil Co.* v. *State, ex rel. Bricker,* 130 Ohio St., 175, 198

N. E., 276, and cases in other jurisdictions cited therein.

In the case of *Taylor* v. *Industrial Commission,* 13 Ohio App., 262, the facts were substantially as follows: Taylor was a night watchman. He went on duty about 5 p. m. and worked until about 6 a. m. With the sanction of his employer, at about 12 o'clock he had an hour for lunch, rest and recreation. On the night in question, during the recreation hour, Taylor stepped out of the shop on the company's property to smoke. In going out he passed down some concrete steps leading from the shop. In a short time he returned, seemingly in pain, and immediately stated that in going out he had fallen on the steps and injured his spine. It was contended that the injury was received outside the course of Taylor's employment. In the course of the opinion at pages 268 and 269, we find the following:

"The procuring of food or other refreshments by an employee although personal in character is considered so far incidental to the employee's work that injuries received while procuring such food and refreshments may be found to arise out of and in the course of the employment, provided the employee acts in a reasonable and prudent manner, and the injuries occur while he is upon the employer's premises, or is subject as an employee to the employer's control."

In 42 Ohio Jurisprudence, 640, Section 57, the following observation is made by the author:

"But acts of ministration by a workman unto himself, which are not forbidden by the employer, the performance of which during working hours is reasonably necessary to his health and comfort, are incidents of his employment and acts of service therein, within the meaning and operation of the compensation act, though in a sense they are personal to himself and only remotely and indirectly conducive to the object of the employment. * * * It has also been held that

an employee of the street-cleaning department of a municipality whose headquarters were in a municipal building in which no toilet facilities were furnished by the municipality, who is accidentally killed as the result of a hazard to which he is exposed while on adjoining premises for the purpose of answering a call of nature, where the employees were accustomed to go, to the knowledge of the municipal authorities, because of the inaccessibility of toilet facilities furnished by the municipality, is killed within the course of his employment within the meaning of the Workmen's Compensation Laws.''

In the case of *Industrial Commission* v. *Henry,* 124 Ohio St., 616, 180 N. E., 194, the court says:

''Where the claimant's decedent had entered upon his employment in the early morning hours, had left the premises of the employer to get his breakfast at a restaurant, in accordance with a custom acquiesced in by the employer, and, while returning to the premises of the employer by a direct and necessary route along a public thoroughfare, was struck by a train running upon the tracks of a railroad so immediately adjacent to the premises of the employer that the only way of ingress and egress toward the restaurant was one of hazard, the accident arose out of and in the course of the decedent's employment.''

The court at pages 620 and 621, in the course of the opinion, says:

''The record shows that it was the custom for the men who worked during night hours at the dairy, after they had started their employment, while waiting for the orders to be filled, to go to get their breakfast, and then return to the plant. This was the practice with the men who began work at these hours, acquiesced in by the employer, evidently because it contributed to the men's efficiency. Hence it was a custom incidental to the employment, and the employer contemplated that Henry should act according to the

custom. Therefore the court did not err in instructing the jury to take into consideration not only the nature and the condition of the premises, but also the nature of the employment and the hours of service required of the decedent and the natural and ordinary conduct of persons so employed during such hours.''

We find confirmation of the above holdings outside of Ohio in a number of cases. In *Von Ette's Case,* 223 Mass., 56, 111 N. E., 696, the court says:

''If a compositor in the employ of a newspaper corporation, who works at night on the sixth floor of his employer's building in a room that is ill-ventilated and is very hot in summer, on a hot summer night, following a practice that prevails among the compositors working in the room, in order to get away from the heat and get into the fresh air descends a fire escape stairway to the roof of an adjoining building belonging to his employer and falls off a part of the roof twenty-three feet away from the stairway where there is no railing, and is killed, his death can be found to have resulted from an injury that arose out of and in the course of his employment \* \* \*.''

In *Sundine's Case,* 218 Mass., 1, 105 N. E., 433, the court says:

''The insurer does not deny this, but it contends that the petitioner's injury did not arise 'out of and in the course of' her employment \* \* \*. This is because she was injured at about noon, after she had left the room in which she worked for the purpose of getting a lunch, and upon a flight of stairs which, though affording the only means of going to and from her workroom, was yet not under the control either of Olsen, her employer, or of F. L. Dunne & Company, for whose work Olsen was an independent contractor.

''The first contention, that she was not in the employ of Olsen while she was going to lunch, cannot be sustained. Her employment was by the week. It

would be too narrow a construction of the contract to say that it was suspended when she went out for this merely temporary purpose and was revived only upon her return to the workroom. It was an incident of her employment to go out for this purpose. * * *

"It was a necessary incident of the employee's [petitioner's] employment to use these stairs. We are of opinion that according to the plain and natural meaning of the words an injury that occurred to her while she was so using them arose 'out of and in the course of' her employment."

In the case of *Whiting-Mead Commercial Co.* v. *Industrial Accident Commission,* 178 Cal., 505, 173 P., 1105, decided by the Supreme Court of California, July 3, 1918, it appears that a workman while lighting a cigarette ignited a turpentine-soaked bandage on his arm and was injured. The court held that the accident arose out of the employment, and in the course of the opinion is found the following:

" 'Such acts as are necessary to the life, comfort, and convenience of the servant while at work, though strictly personal to himself, and not acts of service, are incidental to the service, and injury sustained in the performance thereof is deemed to have arisen out of the employment. A man must breathe and occasionally drink water while at work. In these and other conceivable instances he ministers unto himself, but in a remote sense these acts contribute to the furtherance of his work. * * * That such acts will be done in the course of employment is necessarily contemplated, and they are inevitable incidents. Such dangers as attend them, therefore, are incidental dangers.' "

In the case of *Papineau* v. *Industrial Accident Comm.,* 45 Cal. App., 181, 187 P., 108, a barber shop porter, pursuant to custom, and with the employer's knowledge and approval, left the shop during the forenoon to procure a bottle of milk to use with his

lunch, and was injured while entering the elevator. It was held that the injury arose out of the employment.

To the same effect, see *Hobson* v. *Department of Labor and Industries,* 176 Wash., 23, 27 P. (2d), 1091, wherein Hobson was on duty 24 hours daily as watchman of a logging company which had suspended operations. He was required to furnish his own food supplies. Hobson customarily ordered groceries from his brother, who left them at a point four miles distant from the camp, and on the employer's private railroad. On the day in question, Hobson went to the designated point to pick up the groceries he had ordered. They were not there, and he procured supplies elsewhere, and started toward the camp, using a gasoline speeder for transportation. On the way home the speeder left the track, and Hobson was killed. The court held there was no interruption in the employment when Hobson was procuring the supplies.

In the case of *Rainford* v. *Chicago City Ry. Co.,* 289 Ill., 427, 124 N. E., 643, the plaintiff was employed as a streetcar conductor and, after being placed on a new run, discovered that there was no restaurant at the end of the line where he could buy his lunch. At plaintiff's request the motorman stopped the streetcar in front of plaintiff's house, and plaintiff went in to order his lunch prepared so that he could pick it up on the next trip by. As plaintiff passed the rear of the streetcar, he was struck by another streetcar and injured. In the course of the opinion, the court says:

"That which is reasonably necessary to the health and comfort of the employee, although personal to him, is incidental to the employment and service. * * * In this case the injury was received as a natural incident of the employment."

There are many other cases that might be cited to the same effect.

The defendant has cited various cases to the court in support of its contention that plaintiff was not in the course of her employment at the time of the injury, that the injury was not received in the course of and did not arise out of her employment. We are cited to the case of *Industrial Commission* v. *Ahern, supra.* In that case the claimant was a saleslady in the shoe department on the first floor. On April 14, 1925, at about 9:30 a. m. she left her floor and went to the rug department on the 4th floor for the purpose of buying a rug for herself and while inspecting the rug it slipped from under her causing her to fall backwards and suffer injuries. Certainly such act was not in the course of her employment, neither was the injury received in the course of her employment, nor did it arise out of her employment and such could not have been in contemplation of the contracting parties at the time of the employment. Such action on her part was clearly outside the course of her employment. Neither could such action on the part of the claimant in that case be considered incidental to the employment. The case is clearly distinguishable from the case at bar. The observation made in the *Ahern case, supra,* is equally applicable to the cases of *Verkamp* v. *Industrial Commission, supra; Industrial Commission* v. *Lewis, supra;* and *Industrial Commission* v. *Bateman, supra.* In *Highway Oil Co*, v. *State, ex rel., Bricker, supra,* which is a recent case, the facts were as follows: The employee, without knowledge and against the positive instructions of his employer, brought a gun to the filling station and was injured by its accidental discharge. The court stated in its opinion:

"This court has often interpreted the phrase 'in the course of employment' as used in the Constitution and statutes, and has consistently held that it refers

only to an injury which is the result of or arises out of the employment. No injury having its cause outside of and disconnected with the employment is contemplated, even though the employee at the time may be engaged in the work of his employer in the usual way. And it is essential for a claimant to establish that the employment had a causal connection with the injury, either through its activities, its conditions or its environment.''

If going to the porch to secure the bottle of milk under the circumstances in this case was incidental to the employment, and we believe it was, then the act in question was not disconnected from the employment. Had the claimant been injured on the way to the toilet, or on the way to secure a drink of water somewhere about the house, it could hardly be contended that the injury was not received in the course of the employment. While not expressly provided for in the contract, certainly such contingency would be incidental to the contract's execution.

We can see no particular difference in such situations as suggested above and in the plaintiff going to secure a bottle of milk from the porch intending to return immediately to the switchboard to carry on her work and to consume the milk. This was submitted to a jury as a factual question. We are satisfied that the finding of the jury was not against the manifest weight of the evidence or contrary to law.

Now it is further urged that the court erroneously permitted the testimony of the claimant, that it was the custom of claimant to take her breakfast at the switchboard. We are cited to the case of *Industrial Commission* v. *Ahern, supra,* wherein the court says:

''No custom, rule or regulation, adopted by an employer, will be permitted to place an employee in his employment, if no employment in fact existed at the time of the injury, or if such custom, rule or regulation materially changes the ordinary and commonly

accepted meaning of the phrase 'in the course of employment.' "

That case is clearly distinguishable from the case at bar in that what the employee was doing at the time of the injury was in no way connected with or incidental to the employment, but was on an errand of her own having no connection with her contract of employment. The claimant in the case at bar and her husband were required to be on duty twenty-four hours of the day. The taking of food and drink would be necessary in the execution of the contract in question and incidental thereto. The act was incidental to the employment and claimant had a right to show all the surrounding circumstances and what was customary in connection therewith as bearing on that question and in the cases hereinbefore cited custom was recognized as a factor.

There was no prejudicial error committed in the admission of the testimony in question. The judgment of the lower court is affirmed.

*Judgment affirmed.*

Nichols, P. J., concurs.
Bennett, J., concurs in the judgment.