512 A.2d 1335

Fuller Company and National Union Fire Insurance Company of Pittsburgh, Insurance Carrier, Petitioners *v.* Workmen's Compensation Appeal Board (Colon), Respondents.

Argued May 12, 1986, before Judges MACPHAIL and COLINS, and Senior Judge BARBIERI, sitting as a panel of three.

Richard P. Nuffort, Zimmerman, Pfannebecker & Nuffort, for petitioners.

Theodore Baurer, for respondent, Pablo Colon.

OPINION BY SENIOR JUDGE BARBIERI, July 24, 1986:

Before the Court in this workmen's compensation case is an appeal by Fuller Company, Employer, Petitioner, from an order of the Workmen's Compensation Appeal Board (Board) which affirmed the decision of a referee awarding compensation to Pablo Colon, Claimant, for disfigurement under Section 306(c)(22) of The Pennsylvania Workmen's Compensation Act (Act).[1] We will affirm.

The facts are undisputed. Claimant suffered his injuries on January 23, 1980 described by the referee in his findings as follows:

4. While he was thus engaged, at or about 12:00 o'clock noon, the stone-grinding wheel with which Claimant was working suddenly and without warning shattered, and the many fragments thereof flew apart, several of them striking Claimant in and about the fact, [sic] one of them even becoming embedded directly into his face.
5. The immediate effects of these many impacts of stone fragments with Claimant's fact [sic] included severe lacerations of the face, with

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §513.

profuse bleeding, for which Claimant was treated in the Emergency Room of Lancaster General Hospital, Lancaster, Pennsylvania, as soon as he could be removed there.

. . . .

11. Dr. Kean, in his letter report of May 9, 1982, stated: 'These scars are unsightly and disfiguring and they will leave a permanent problem. He reiterated his prognosis as to permanent at his deposition, *e.g.:*

He will always have a scar.' (N.T., Kean, 22)

'He will have scarring even after (a recommended treatment). . . . If he's not treated, he will just continue looking like he does.' *(Id.,* 24)

'[H]e will always have a scar. He will never be left without a scar.' *(Id.,* 31)

'The scar is permanent, yes.' *(Id.,* 32)

Testimony was taken originally before Referee Clement J. Cassidy, but the case was completed and the instant decision was rendered by Referee Harry C. Jackson. Referee Jackson made the following additional findings:

13. On June 28, 1982, a hearing was held before Referee Clement J. Cassidy of the Workers' Compensation Bureau, in Lancaster. The Referee, having viewed Claimant's face, described the scarring as 'unsightly' and went on to stress:

*'This scar is always going to be there. You* know it and *you* know it (indicating). Because *it's not a surface scar, it's an indentation.* (Emphasis added.)' *(Id.).* (N.B.: 'indicating' to 'you' and 'you' denoted the Referee's pointing to each counsel in turn.)

He also opined that the photograph taken one week previously 'makes (the scar) look better than it is on actual view.' (Emphasis in original.)

. . . .

20. Claimant's disfigurement consists of the following scars: there is a 4.5-centimeter depressed scar of the right facial area above the mandible margin; there is an S-shaped scar running from the area of the lower lip laterally and posteriorly and inferiorly to the margin of the mandible measuring approximately five centimeters and exhibiting a 'trapdoor effect' with depression of the scar (the said 'trapdoor effect' being describable as a raising of skin to one side of the scar above the surface of the skin at the other side of the scar as if the skin had been elevated like a trapdoor and then put back but not closing completely, leaving thereby an area of rounding of the margins with puffiness at the edges and a consequent depression along the lines of the scar); there is another scar on the other side of the face lateral to the left corner of the mouth, and running approximately 1.5 centimeters in a vertical direction.

In his Conclusions of Law, Referee Jackson commented that the disfigurement provision of the Act, Section 306(c)(22), 77 P.S. §513, contains no standards or guidelines to assist a referee in fixing the appropriate number of weeks to be awarded "[o]nce a referee determines, as a matter of fact, that a Claimant's scarring rises to the level of a serious and permanent disfigurement. . . ."

Based upon this latter observation by the referee, Employer and its insurer contend that (1) the referee abused his discretion in awarding 200 weeks for the disfigurement, since the extent of the award is without substantial competent evidence to support it; (2) the provision of the Act under which this award was made, Section 306(c)(22), 77 P.S. §513(22), is unconstitutional in failing to provide adequate standards to guide the ref-

eree in fixing an award; and (3) the scars suffered by Claimant were not established as permanent, since additional surgery could serve to further reduce the unsightly appearance. We find no merit in any of these contentions.

Our examination of the record establishes that there is sufficient competent evidence, substantial in nature, to support the following finding of the referee:

18. The Referee finds as a fact that Claimant's facial scars are serious, permanent and disfiguring, and are such as to produce a permanently unsightly appearance.

Employer's second contention that there are no legislative standards poses a constitutional argument which amounts to this; that in order for a delegation by the Legislature to be constitutionally valid, the Legislature must include certain standards and guidelines which must be followed by the administrative body to serve as guides and restrain the exercise of the delegated authority. Employer contends that this issue has not previously been faced by our appellate courts. While this may be true, the standards for determining constitutionality of provisions of the workmen's compensation laws have been addressed at length in prior appellate decisions, quite thoroughly in a recent decision by this Court in the case of *Guess v. Workmen's Compensation Appeal Board (Link Belt/FMC Corp.)*, 77 Pa. Commonwealth Ct. 319, 466 A.2d 1098 (1983). We there stated:

The proper standard of review in analyzing the constitutionality of this classification is the rational basis test. As the right to disability benefits is not a fundamental right, and the class of partially disabled employes is not a suspect class, the strict judicial scrutiny test is inapplicable. Thus to pass constitutional muster under the rational basis test, the Act's classification

must bear a reasonable relationship to a legitimate state objective.

*Id.* at 324, 466 A.2d at 1101.

Since the burden of establishing a contention for unconstitutionality of a statutory provision is certainly upon one who makes such an assertion, Employer here has the burden to establish its contention. We fail to find any support statutory, decisional or logically which would require this Court to strike down the disfigurement provision which has served quite adequately since establishment by the Legislature in 1921.[2]

Indeed, the latitude afforded the trier of the facts in making a monetary evaluation is certainly not unrestrained by the Legislature in fixing a maximum of 275 weeks as the outside limit for a disfigurement award. This is by far more restrictive than the authority granted to a jury in similarly evaluating a disfigurement in cases at common law where there is no limit whatsoever on the amount that a jury may award in such cases. Actually, in enacting the workmen's compensation laws and taking from injured workers the common law right to recover in an unlimited fashion, the Legislature ordained that in exchange for more restricted recoveries in workmen's compensation cases, workers need not prove fault or otherwise cope with the prior, almost insurmountable common law defenses.[3] Determination of

---

[2] Act of May 20, 1921, P.L. 966. The provision then remains unchanged except for the percentage of wages, then 60% and now 66 2/3%, and the limit on weeks awardable, then 150 weeks and now 275 weeks.

[3] Section 201 of the 1915 Act, 77 P.S. §41, eliminated the Employer's three common law defenses: (1) the defense that the injury was caused in whole or in part by the negligence of the injured Employe's fellow worker, the "fellow employe rule," (2) that the injured employe assumed the risk in question when he accepted the employment, the "voluntary assumption risk rule," and (3) that the employe's own negligence contributed to his injury, the "contributory negligence rule". Section 201 of the Act, 77 P.S. §41.

Section 201 was held to be constitutional in *Anderson v. Carnegie Steel Co.*, 255 Pa. 33, 99 A. 215 (1916).

the amount of an award for disfigurement remains purely discretionary with the referee *Republic Steel Corp. v. Workmen's Compensation Appeal Board (Deppenbrook)*, 82 Pa. Commonwealth Ct. 596, 476 A.2d 989 (1984); *Koppers Co. v. Workmen's Compensation Appeal Board (Martin)*, 80 Pa. Commonwealth Ct. 288, 471 A.2d 176 (1984), and sometimes the Board. *See American Chain & Cable v. Workmen's Compensation Appeal Board (Weaver)*, 70 Pa. Commonwealth Ct. 579, 454 A.2d 211 (1982). In light of the serious and extensive scarring suffered by the Claimant in this case, we can find no abuse of discretion in the referee's grant of 200 weeks of compensation out of a possible 275 weeks authorized by the Legislature.

Furthermore, we find no merit in the Employer's third contention questioning the permanence of the scars suffered by Claimant on the basis that there is no evidence to support the finding of permanence of the scars. We quote from the Board's opinion as follows:

The Claimant presented the testimony of Herbert Kean, M.D., and Milton Lu, M.D. Dr. Kean testified by way of deposition (Tr. 5/26/82, p. 21) in pertinent part as follows:

Q. What prognosis would you care to express regarding the seriousness and permanence of these scars?

A. It's my opinion that the scars are stable at this point and they present an aesthetically unappealing look. They are not nice to look at there on the face. They're visible to him at all times and to people who look at him, and there are some impaired functions in the area . . .

Dr. Lu testified by way of deposition (Tr. 6/7/82, p. 38-39) in pertinent part as follows:

Q. . . . What I'm asking you is if nothing more were done, how much longer would you

estimate that it would take until the scars would subside completely, or would that ever happen without further surgical procedures?

MR. ALBERT: Excuse me, Mr. Baurer. To clarify your question, you're asking him will the scars subside permanently if Dr. Lu doesn't do any further surgery?

MR. BAURER: That's right, yes.

A. No, it will never subside.

Q. Will never subside?

A. That's right.

The quoted testimony of Drs. Kean and Lu represent substantial competent evidence on which the Referee could base his decision and award compensation to the Claimant for disfigurement pursuant to the applicable Section of the Act.

Finally, we find no merit in the Employer's contention that permanence is questionable because plastic surgery may sometime in the future bring about an improvement and less sightly appearance. In this regard, we refer to our decision and opinion in *Republic Steel Corp.*

For the reasons stated, the order of the Board will be affirmed.

### ORDER

Now, July 24, 1986, the order of the Workmen's Compensation Appeal Board at No. A-88457, dated June 28, 1985, is hereby affirmed.