**VERIZON PENNSYLVANIA, INC., Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (ALSTON), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 13, 2006.

Decided May 31, 2006.

Christopher H. Wright, Bala Cynwyd, for petitioner.

Patrick M. Donan, Philadelphia, for respondent.

BEFORE: McGINLEY, Judge, COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge COHN JUBELIRER.

Verizon Pennsylvania, Inc. (Employer) petitions for review of an Order issued by the Workers' Compensation Appeal Board (Board). In its Order, the Board affirmed a decision of the Workers' Compensation Judge (WCJ) to grant the Claim Petition of Brenda Alston (Claimant) and ordered payment of disfigurement benefits. We affirm.

The WCJ's findings of fact provide the factual background for this appeal. Claimant sustained a head and neck injury by falling down a set of stairs on January 7, 2002. As of that date, Claimant had been a thirty-two year employee of Employer as a systems engineer. (WCJ Finding of Fact (FOF) ¶ 3(a).) Her job duties involved interfacing application programs and computers, as well as troubleshooting computer problems. (FOF ¶ 3(b).) Claimant worked three days per week at Employer's Freehold, New Jersey office and worked at home, in her basement office, two days per week. (FOF ¶ 3(c).) While working at home on January 7, 2002, Claimant received a work-related telephone call from her supervisor while she was upstairs drinking a glass of juice. (FOF ¶ 3(e).) Feeling that the work issue needed immediate attention, Claimant began descending the steps to return to her home office. (FOF ¶ 3(e).) While descending the steps, Claimant fell, hitting her head and injuring her neck. (FOF ¶ 3(e).) As a result of this injury, Claim-

ant was out of work from January 9, 2002 to January 9, 2003. (FOF ¶ 3(f).) During this period, Claimant received full pay and medical benefits from Employer. (FOF ¶ 3(f).)

Claimant underwent surgery to her neck on July 5, 2002, to repair her neck injury. (FOF ¶ 3(h).) The scars resulting from this surgery are the basis for Claimant's disfigurement benefits claim. The scar is a:

> Vertical scar on the back of the neck, discolored and lighter than the surrounding skin; 3/32 of an inch in width, four and one-half inches in length. Both to the left and to the right of the vertical scar are a series of points and dots, which are raised from the skin, some of which are discolored and are 1/8 inch apart. At a distance of eight feet, the scars are very visible, which disfigure Claimant's appearance.

(FOF ¶ 4(a), (b), and (c).)

On November 17, 2003, Claimant filed a Claim Petition requesting formal recognition of her injuries sustained on January 7, 2002, and seeking disfigurement benefits. Employer did not file a timely Answer to the Claim Petition and, subsequently, did not appear at the first hearing before the WCJ. Because of Employer's inaction, Claimant argued that the allegations in the Claim Petition should be deemed admitted under Section 416 of the Workers' Compensation Act (Act).[1] After entertaining this motion, the WCJ rescheduled the hearing and provided Employer with the opportunity to explain its late Answer and non-appearance at the first hearing.

■ At the second hearing, on April 28, 2004, counsel for Employer appeared, raising a defense that Claimant did not sustain her injury while in the course and scope of her employment. Despite Claimant's objections, the WCJ allowed the defense, but denied Employer the opportunity to argue intervening causation because of its unexcused, late Answer. In a Decision and Order issued September 8, 2004, the WCJ found that Claimant's injury occurred while in the course and scope of her employment pursuant to Section 301(c)(1) of the Act.[2] The WCJ also concluded that Claimant's injury resulted in disfigurement, entitling Claimant to eighty-five weeks of benefits under Section 306(c)(22) of the Act.[3] Relying on the findings of fact and credibility determinations made by the WCJ, the Board affirmed the WCJ's holding. Employer now petitions this Court for review of the Board's decision.[4]

■ On appeal, Employer argues that: (1) Claimant's injury did not occur in the course and scope of her employment; and (2) Claimant's disfigurement award is excessive.[5]

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 821. This section states, in pertinent part, that "[i]f a party fails to file an answer and/or fails to appear in person or by counsel at the hearing without adequate excuse, the workers' compensation judge hearing the petition shall decide the matter on the basis of the petition and evidence presented."

2. 77 P.S. § 411(1).

3. 77 P.S. § 513.

4. This Court's standard of review is limited to determining whether there has been an error of law, a violation of constitutional rights, or whether necessary findings of fact are supported by substantial evidence. *Bailey v. Workers' Comp. Appeal Bd. (U.S. Airways),* 865 A.2d 319, 322 n. 2 (Pa.Cmwlth.2005).

5. The WCJ, as finder of fact, determines questions of credibility and weight of the evidence, and may accept or reject the testimony of any witness, in whole or in part. *Newhouse v. Workers' Comp. Appeal Bd. (PJ Dick/Trumbull Corp.),* 803 A.2d 828, 832 (Pa.Cmwlth.2002).

**444**

First, Employer argues that Claimant was not injured in the course and scope of her employment.[6] Because she had gone to the kitchen to get a drink, Employer does not believe her injury occurred in furthering Employer's business or affairs.

We note at the outset that, to date, there is no appellate precedent from Pennsylvania specifically discussing the issue of workers' compensation coverage for employees who work at an "at-home office" outside of the employer's primary work office. We, thus, look to workers' compensation law generally and apply it by analogy to the category of employees who conduct their business at an "at-home office."

In order for a claimant to establish a right to compensation under the Act, Section 301(c)(1) requires that the claimant prove the existence of an employment relationship during which an injury arose in the course of the employment and was related thereto. *Wachs v. Workers' Comp. Appeal Bd. (American Office Sys.)*, 584 Pa. 478, 484, 884 A.2d 858, 862 (2005). Pursuant to Section 301(c)(1) of the Act:

> The term 'injury arising in the course of his employment,' as used in this article . . . shall include all other injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere. . . . [7]

77 P.S. § 411(1) (footnote added). In *Acme Markets, Inc. v. Workers' Comp. Appeal Bd. (Purcell)*, 819 A.2d 143 (Pa. Cmwlth.2003), this Court stated that the Act sets forth two situations in which an injury may be sustained in the course of employment:

> (1) where the employee, whether on or off the employer's premises, is injured while actually engaged in the furtherance of the employer's business or affairs, or (2) where the employee although not actually engaged in the furtherance of the employer's business or affairs (a) is on the premises occupied or under the control of the employer, or upon which the employer's business or affairs are being carried on; (b) is required by the nature of his employment to be present on his employer's premises; and (c) sustains injuries caused by the condition of the premises or by operation of the employer's business or affairs thereon.

*Id.* at 147 (quoting *Workmen's Comp. Appeal Bd. (Slaugenhaupt) v. United States Steel Corp.*, 31 Pa.Cmwlth. 329, 376 A.2d 271, 273 (1977)). In this case, we are only dealing with the first situation. Whether Claimant sustained an injury in the course of her employment is a question of law which must be reviewed de novo. *Wachs*, 584 Pa. 478, 484, 884 A.2d at 862.

When an employee files a claim for injuries occurring somewhere other than the employer's premises, the Courts

---

6. "Every employer shall be liable for compensation for personal injury to, or for the death of each employe, by an injury in the course of employment. . . ." 77 P.S. § 431.

7. The remainder of this statutory section provides that the term "injury arising in the course of his employment" shall also include: all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employe's presence thereon being required by the nature of his employment. 77 P.S. § 411(1). Here, because the only arguments raised before us involve whether Claimant was furthering her employer's business, we limit our analysis to that issue.

have generally evaluated these claims by distinguishing between stationary and traveling employees. *See generally Denny's Rest. v. Workmen's Comp. Appeal Bd. (Stanton)*, 142 Pa.Cmwlth.531, 597 A.2d 1241 (1991) (explaining that courts have analyzed "course of employment" cases differently depending upon whether the employee is categorized as a traveling or stationary employee). For "traveling" employees, "[t]emporary departures from the work routine for the purpose of administering to the comforts of an off-the-premises employee, including authorized breaks for lunch, will not interrupt the continuity of the employee's course of employment." *Roman v. Workmen's Comp. Appeal Bd. (Dep't of Envtl. Res.)*, 150 Pa.Cmwlth. 628, 616 A.2d 128, 130–31 (1992) (quoting *Port Auth. of Allegheny County v. Workmen's Comp. Appeal Bd. (Stevens)*, 70 Pa. Cmwlth. 163, 452 A.2d 902, 904 (1982)). However, when a "stationary" employee leaves the employer's premises during authorized breaks for personal reasons, *i.e.*, reasons unrelated to her required job duties, the employee is not within the course of her employment. *Pesta v. Workmen's Comp. Appeal Bd. (Wise Foods)*, 153 Pa.Cmwlth.616, 621 A.2d 1221, 1223 (1993).

Here, Claimant was not "traveling"; she was working at her "home office," a fixed location approved by Employer as her secondary work premises. Unlike the facts in the cases cited by Employer, however, Claimant did not leave the premises where she was authorized to work. For example, a worker who sustained injuries when she fell in a hole on the sidewalk while on a lunch break two blocks from the employer's premises, was "serving her own purposes" in choosing to leave the premises for a lunch break and not furthering the purposes of her employer. *Collins v. Workmen's Comp. Appeal Bd. (American Society for Testing)*, 99 Pa.Cmwlth. 228, 512 A.2d 1349 (1986). Other cases cited in *Collins* involved similar factual scenarios, where a claimant either left the employer's premises or conducted purely personal activities on the employer's premises.[8]

In addition, there is a "well established 'personal comfort' doctrine" under which an employee who sustains an injury during an inconsequential or innocent departure from work during regular working hours, such as going to the bathroom, is nonetheless considered to have sustained an injury in furtherance of the employer's business. *Montgomery Hosp. v. Workers' Comp. Appeal Bd. (Armstrong)*, 793 A.2d 182, 187–88 (Pa.Cmwlth.2002) (finding claimant's injuries compensable when sustained while using restroom facilities at work); *see also U.S. Airways v. Workers' Comp. Appeal Bd. (Dixon)*, 764 A.2d 635

---

**8.** Some of the cases cited by *Collins* include: *Riccio v. Workmen's Comp. Appeal Bd. (Bi-Comp, Inc.)*, 76 Pa.Cmwlth.573, 464 A.2d 669 (1983) (holding claimant's injury not compensable where claimant tripped on crack in sidewalk in front of employer's premises while on her way to vending truck before work, specifically not on a mission directed by her employment); *Giebel v. Workmen's Comp. Appeal Bd.*, 41 Pa.Cmwlth. 333, 399 A.2d 152 (1979) (finding claimant's injuries non-compensable where claimant sustained an injury while shopping in employer's retail store during her lunch hour, a place claimant was not required to be by the nature of her employment); *J.R. Hess, Inc. v. Workmen's Comp. Appeal Bd.*, 17 Pa.Cmwlth. 87, 329 A.2d 923 (1975) (holding that claimant did not meet her burden of proof where claimant's husband was killed in an automobile accident while traveling in an area not connected to his employer, and while he had been performing work for another employer); and *Peccon v. Francis Market*, 207 Pa.Super. 36, 215 A.2d 261 (1965) (finding claimant not in the course of employment where she left her place of employment with the express or implied consent of employer to go to lunch at a restaurant of her own choice).

(Pa.Cmwlth.2000) (finding compensable injuries sustained by employee after picking up takeout lunch on first floor of building to take back to her desk so she could work through lunch during a particularly busy time for employer).

Perhaps the most closely analogous case to the one at bar was decided by this Court in *Jones v. Workmen's Comp. Appeal Bd. (Rehabilitation Coordinators, Inc.)*, 88 Pa.Cmwlth.426, 489 A.2d 1006 (1985). There, the claimant, a rehabilitation coordinator, worked out of her home and only reported to her employer's offices for conferences and upon request. *Id.* at 1007. As part of the claimant's job, she would go to clients' homes to meet with them and accompany them to appointments. The claimant also performed part of her work in her home, such as writing reports and making telephone calls. Employer paid claimant her normal wages for the time she spent working at home, but it did not pay her any fee for her use and maintenance of a portion of her home as an office. The claimant was also reimbursed for mileage and for the time spent traveling and waiting. On the date of the injury in question, the claimant had escorted a client to an appointment, took the client back to his home, and then returned to her own home. She parked her car and ascended the steps to a walkway on her property where she slipped and fell on a patch of ice, suffering injuries. The Board determined that the claimant was not in the course of her employment because her transportation was over when she parked her car, that she was then "home," and no longer performing her duties as an employee. *Id.* at 1008. This Court reversed the Board finding that the claimant did not "abandon" her employment at the time of the injury because she had finished with her use of the automobile for transportation. *Id.* Instead, this Court reasoned that, at the time of her injury, the claimant

was not on her own time; rather, she was on her employer's time because the employer's personnel policy anticipated her return home as incidental to the duties she performed there and elsewhere on its behalf. *Id.* Thus, because there were no intervening circumstances to suggest that the claimant had been engaged in any duties other than those relating to her employment, her injury was found to be compensable. *Id.* at 1008–09.

The facts in *Jones* are similar to the facts here, in that Claimant is requesting compensation for an injury that took place while working for Employer in her home, where she worked 2 days per week, but which was away from Employer's official place of business. Like *Jones*, Claimant, here, was engaged in furthering the business of her Employer because, at the time of her injury, she was speaking with her supervisor on the telephone and descending the stairs in order to address a work matter that her supervisor called to discuss with her. Although the reason for Claimant's necessity to walk down the stairs was due to the fact that she retrieved a drink from her kitchen, we cannot conclude that this was an "abandonment" of her employment. *Jones.*

Our Supreme Court has also addressed an instance where a claimant was injured at his home, away from the employer's work site, but nevertheless the injury was found to be compensable. In *City of Harrisburg v. Workmen's Comp. Appeal Bd. (Gebhart)*, 532 Pa. 592, 616 A.2d 1369 (1992), the Supreme Court reversed this Court's decision and held that a police detective who was injured when he accidentally discharged his service revolver while unholstering it at his home, after the end of his work shift, was compensable. The Court set forth the two-part requirement that the injury must occur in the course of employment and be related

thereto, and that in making that determination, it "must ascertain whether Claimant was actually engaged in the furtherance of Employer's business when the off-premises injury occurred." *Id.* at 597, 616 A.2d at 1371. The Court held that a paramount part of an officer's job is to secure and store his service revolver after the work shift ends. However, in this case, the employer failed to provide an area on the premises where its employees could properly secure and store their service revolvers. Therefore, in attempting to secure his service revolver at his home, after his work shift ended, the claimant was acting in furtherance of his employer's business and, thus, clearly sustained a compensable injury within the course of employment *Id.* at 597–98, 616 A.2d at 1371. *See also Krawchuk v. Philadelphia Elec. Co.*, 497 Pa. 115, 439 A.2d 627 (1981) (finding a fatal heart attack occurring at home to be compensable because decedent suffered unusual stress and pressure relating to his course of employment).

The Supreme Court, in *City of Harrisburg*, extended benefits to a claimant who was not necessarily "on the clock" when the injury took place but, nevertheless, was found to be in the course of employment at the time of the injury. In the case at bar, we note that Claimant suffered her injury during her normal working hours at her "at-home" work site, which was approved by Employer, and the injury occurred while talking on the telephone with her supervisor and returning to her computer to attend to a business matter that the supervisor called to discuss, which she interpreted as needing immediate attention. Thus, under the specific facts of this particular case, Claimant was clearly engaged in furthering Employer's business at the time she was injured, despite the fact that she had briefly departed from her work station to attend to her personal comfort.[9] Seeing no error in the WCJ's application of law, we conclude that Claimant sustained her injuries within the course and scope of her employment.

 Employer's second argument is that the WCJ's award of eighty-five weeks of disfigurement (specific loss) benefits to Claimant was excessive.[10] Section 306(c)(22) of the Act provides no standard or guidelines to assist a WCJ in awarding benefits to a Claimant. It is well-settled law that, "an award for disfigurement remains purely discretionary with the referee." *Fuller Co. v. Workmen's Comp. Appeal Bd. (Colon)*, 99 Pa.Cmwlth.193, 512 A.2d 1335, 1338 (1986). A WCJ's award that is not outside the range that most WCJ's would award cannot be disturbed on appeal. *Lord & Taylor v. Workers' Comp. Appeal Bd. (Bufford)*, 833 A.2d 1223, 1225–26 (Pa.Cmwlth.2003).

---

**9.** Our analysis finds support in two cases from Ohio and Nebraska, *Bremner v. Indus. Comm'n*, 63 Ohio App. 387, 27 N.E.2d 164 (1938) and *Sheets v. Glenwood Tel. Co.*, 135 Neb. 56, 280 N.W. 238 (1938). In both cases, the claimants worked as telephone operators, maintaining telephone switchboards within their personal homes. In *Bremner*, similarly to the present case, the claimant took a break from her home employment to get a drink. While returning to her work, she suffered a compensable injury occurring within the course and scope of her employment. In *Sheets*, a non-compensable injury occurred when the claimant, while returning to her switchboard, suffered an injury. The claimant had left her work duties on a personal break to get a drink and converse with neighbors. Although she was required to return to work when an alarm, installed by her employer, sounded at the switchboard, because the alarm had not sounded, the claimant was not furthering the business affairs of her employer when returning to her work station.

**10.** The presence of disfigurement is not at issue, but there is a remaining question of whether the eighty-five weeks of disfigurement benefits are proper.

Case law implicitly assigns the Board with review of disfigurement award amounts. "[I]f the [Board] concludes, upon a viewing of a claimant's disfigurement, that the [WCJ] capriciously disregarded competent evidence by entering an award significantly outside the range most referees would select, the [Board] may modify the award as justice may require." *Hastings Indus. v. Workmen's Comp. Appeal Bd. (Hyatt)*, 531 Pa. 186, 192, 611 A.2d 1187, 1189 (1992).

In the present case, the Board, relying upon its experience with disfigurement awards, determined that the award is consistent with the permissible range of disfigurement benefits for this type of injury. In our review of the WCJ's description of the scars and the Board's affirmance, we find there is substantial evidence to support a conclusion that eighty-five weeks of disfigurement benefits is within the standard range of awards for this type of injury. Where the benefits awarded fall within the standard range of benefits awarded for this type of injury, the decision of the WCJ shall not be disturbed.

Accordingly, the Order of the Board is affirmed.

### ORDER

**NOW,** May 31, 2006, the order of the Workers' Compensation Appeal Board in the above-captioned matter is, hereby, affirmed.