**Donald WERNER, Deceased, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (GREENLEAF SERVICE CORPORATION), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 15, 2011.

Decided Sept. 1, 2011.

Lenard A. Cohen, Philadelphia, for petitioner.

Richard E. Bordonaro, Erie, for respondent.

BEFORE: LEADBETTER, President Judge, and BROBSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge BROBSON.

Brenda Werner (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board), issued December 14, 2010. The Board affirmed the decision of a Workers' Compensation Judge (WCJ), which denied Claimant's fatal claim petition requesting benefits as a result of the death of Donald Werner, Claimant's husband (Decedent). For the reasons that follow, we affirm.

Claimant filed a fatal claim petition against Greenleaf Services Corporation (Employer) on February 14, 2008, alleging that Decedent sustained a work-related injury in the nature of a massive intracranial hemorrhage on March 8, 2007, which ultimately led to Decedent's death on March 18, 2007. Employer filed a notice of denial on March 11, 2008. By agreement of the parties, the WCJ bifurcated the proceedings to first address the issue of whether Decedent was in the course and scope of his employment at the time of his injury. The WCJ held hearings on May 20, 2008, and July 30, 2008, relating to the issue of course and scope of employment.

The Board aptly summarized the relevant evidence and witness testimony as follows:

> Claimant testified that Decedent was employed by [Employer] as its international sales manager. [(Reproduced Record (R.R.) at 267a.)] She stated that when he was not traveling, he worked out of his home in [Fort Lee,]

New Jersey and at [Employer]'s facility in Saegertown, Pennsylvania. [ (*Id.* at 268a.) ] He spent Monday through Friday in Saegertown, sometimes for two or three weeks, then a week at home, or it could be every other week. [ (*Id.* at 299a.) ] Decedent maintained an office in the basement of his home with a computer, fax machine, cell phone and printer owned by [Employer], and had a personal computer, fax, and printer on the second floor of the home. [ (*Id.* at 268a–69a, 300a–01a.) ] Claimant further testified that Decedent injured his right hand while on a vacation in Texas immediately before March 8, 2007. [ (*Id.* at 283a–84a.) ] He accordingly cancelled a business trip to Europe, planned for March 10, because he wouldn't have been able to carry things and he had to have the stitches removed. [ (*Id.* at 289a.) ]

Claimant testified that Decedent's pattern was to be at his desk by 8:00 a.m. or before. [ (*Id.* at 274.) ] On the date of injury, Claimant called to Decedent at 11:30 a.m. to tell him she was leaving, and he responded. [ (*Id.* at 276a–77a.) ] She returned at 12:30 and stayed in her car talking on her cell phone until shortly before 1:00 p.m. She then entered the house, called down to Decedent, got no answer, and assumed he was on the phone. [ (*Id.* at 277a–78a.) ] Claimant watched television until 2:00 p.m., then called downstairs again to notify Decedent she was going to the grocery store. When he didn't answer, she went down to hand him a note asking if he needed anything. She saw Decedent sitting in his desk chair, spoke to him and got no answer, then was able to see that there was something wrong and called her son, then called 911. [ (*Id.* at 279a–80a.) ] Claimant stated that Decedent had a nose bleed and that later, she found bloody

tissues and blood on the floor of the first-floor bathroom. [ (*Id.* at 280a–81a.) ] Decedent's cell phone was in that bathroom. [ (*Id.* at 281a.) ]

Claimant testified that she was not able to communicate from the date of injury until the time of his death. [ (*Id.* at 282a.) ] She stated that she believed Decedent fell at the front entry to the house because there was blood on the sidewalk and his glasses were off to the side. [ (*Id.* at 291a.) ] Claimant further stated that Decedent went out the front door and smoked in that general area, and that the home burglar alarm was on when she arrived at home and she had to disengage it. [ (*Id.* at 283a, 292a.) ]

Paul Werner, Decedent's son, testified that his mother called him in the early afternoon on March 8, 2007, and said that his father was in his basement office, looked like he was hurt, and was not responding. [ (*Id.* at 396a.) ] Mr. Werner further testified that he saw his father's glasses and some blood on the ground at the bottom of the two exterior steps leading to the front door of the home. [ (*Id.* at 398a.) ] He also found blood coming up the front stairs and into the foyer leading back to the bathroom on the main floor of the house, on the bathroom floor, and in the bathroom sink. [ (*Id.* at 399a–400a.) ] Mr. Werner stated that the front door was seldom used and was kept chained, and that the home alarm was usually set even during the day when people were home. [ (*Id.* at 402a, 418a.) ] Mr. Werner testified that he may have deleted personal emails from Decedent's company-issued laptop computer, but did not delete any business-related emails. [ (*Id.* at 407a.) ] He agreed that Decedent did personal work in the basement office and used the company-issued lap-

top for personal reasons. [ (*Id.* at 430a.) ]

Claimant submitted into evidence a death certificate indicating blunt force head injuries as the cause of Decedent's death. [ (*Id.* at 334a.) ] Claimant also submitted into evidence a packet of copies of email messages sent by [Employer], along with a printout from an email program indicating that Decedent sent 8 emails, 7 of which appeared to be work-related, between 7:52 a.m. and 10:12 a.m. on March 8, 2007. [ (*Id.* at 26a–209a.) ]

James Greenleaf, [Employer]'s president and CEO, testified that [Employer] manufactures and sells industrial cutting tools and other products for the cutting tool industry and the electronic and medical device industry, and sells products in 56 countries. [ (*Id.* at 439a, 442a.) ] Mr. Greenleaf testified that when Decedent was hired in 1993, he worked out of his home and traveled. [ (*Id.* at 443a–45a.) ] He further testified that in the 2002–2003 timeframe, he determined that [Employer was] not getting full value from Decedent, and instructed management employees that he wanted to see Decedent in the Saegertown office if he wasn't calling on customers. [ (*Id.* at 446a–47a.) ] He testified that after that, Decedent was in Saegertown on a routine basis. [ (*Id.* at 459a–60a.) ]

David Galey, [Employer]'s treasurer, testified that [Employer] reimbursed Decedent for costs associated with his home office, such as a telephone line and internet access, and that [Employer] did the same for all of its salesmen. [ (*Id.* at 549a, 564a, 566a.) ] ... Mr. Galey further testified that [Decedent] was a salaried employee with no set schedule. [ (*Id.* at 575a–76a.) ]

David Rydbom, [Employer]'s manager of sales and marketing, technical services, and engineering, testified that Decedent moved into a cubicle in [Employer]'s Saegertown office around 2002 or 2003. [ (*Id.* at 622a, 625a.) ] ... Mr. Rydbom stated that if Decedent worked at home, it was totally at his discretion, and that personal use of the company laptop was permitted. [ (*Id.* at 629a, 634a.) ] He further stated that Decedent was paid a set salary regardless of hours worked. [ (*Id.* at 636a.) ]

Mr. Rydbom testified that he received an email from Decedent on March 4, advising that Decedent sustained an injury requiring stitches while repairing a garage door, and that Decedent's planned trip to Europe had to be delayed. [ (*Id.* at 638a–39a.) ] Mr. Rydbom stated that he considered Decedent to be on sick leave due to his injury following his return from Texas, as Decedent was staying at home in New Jersey for medical appointments to take care of his injury. [ (*Id.* at 640a–41a.) ] He also testified that Decedent called him at 9:40 a.m. on March 8 and that they spoke for 19 minutes on various matters. [ (*Id.* at 642a–44a.) ] Mr. Rydbom subsequently agreed that telephone records showed that he had called Decedent. [ (*Id.* at 667a.) ] He also agreed that various emails sent from Decedent's computer on March 8, 2007 were work-related, with the last one sent at 10:12 am [ (*Id.* at 673a–77a.) ]

[Employer]'s human resource manager, Debra Spence, testified that because Claimant had cut his hand and had to cancel a trip, she assumed he was on sick leave. [ (*Id.* at 705a, 714a.) ]

[Employer] presented the testimony of Mary Beth Werner Lee, Decedent's daughter. [ (*Id.* at 757a.) ] Ms. Lee testified that she commonly spoke with her father by phone and corresponded

with him via email during the workday, and that her father used his business computer for that correspondence. [ (*Id.* at 764a–65a.) ] She agreed that she was discussing personal matters with her father by email up through 9:27 a.m. on March 8. [ (*Id.* at 773a.) ]

(Board's Decision at 4–8 (footnotes omitted).)

By decision issued April 2, 2009, the WCJ denied Claimant's fatal claim petition. The WCJ determined that Claimant failed to produce sufficient evidence to establish that Decedent was acting in the course and scope of his employment at the time of his injury. In so determining, the WCJ stated, in pertinent part:

13. This adjudicator has no real problem with the credibility of any of the witnesses. It appears that each is credible, but is only seeing the picture for his or her own perspective. Although [Decedent] was "supposed" to work out of the Saegertown facility, it is clear that he actually did work from home at times even after 2002–2003. Although [Decedent] had a home office in the basement, this space was used for personal and business matters. Just because [Decedent] was in the basement or even in the basement office it cannot be presumed he was working. It is apparent that due to the nature of its business, the employer allows for substantial overlap in personal and business matters throughout the day. For example, since an employee might have to be available to a customer at 10:00 or 11:00 PM, [Employer] does not make rules disallowing the use of the business computer and/or cell phones for personal reasons. The rules

for [Employer] appear to be very relaxed in this area.

With that being said, it is impossible to tell what [Decedent] was doing on March 8, 2007 other than he received some business and personal communications that morning. That fact that he was sitting in a chair in his home office when he was discovered by his wife is not enough to prove he was in the course and scope of his employment at the time of his injury.

14. This judge accepts as most credible the testimony of Debra Spence that [Decedent] was actually on sick leave on March 8, 2007 because that is supported by other testimony, emails that he was having stitches taken out and an MRI due to non work related conditions and the fact that [Decedent] cancelled his business trip for [Employer] during this time period due to his non work related injury. The fact that he may have read some emails or made some business phone calls does not establish that he was in the course and scope of his employment at any time on May 8, 2007 let alone at the time he was injured and died.

(WCJ Decision at 4.)

Claimant appealed the WCJ's decision to the Board, arguing that the WCJ erred in determining that Claimant failed to establish that Decedent was in the course and scope of employment at the time of his injury. By order issued December 14, 2010, the Board affirmed. This petition for review followed.

■ On appeal,[1] Claimant argues that the WCJ and the Board capriciously disre-

1. This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704. Furthermore, "review for capricious disregard of material, competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the

garded the evidence of record and erred as a matter of law in denying her fatal claim petition. Specifically, Claimant contends that the WCJ and the Board erred in determining that Claimant failed to establish that Decedent was injured in the course and scope of his employment because the totality of the evidence demonstrated the following: Employer provided Decedent with a computer, fax machine, printer, telephone, and filing cabinets for his home-office and· reimbursed Decedent for his home-office expenses; Decedent had a longstanding history of working from his home-office and Employer permitted Decedent to do so; and Decedent had a work-related telephone conversation and sent and received work-related emails from his home-office on March 8, 2007. While Claimant admits that Decedent may not have been actually engaged in work-related activities at the precise time that Decedent was injured, Claimant argues that Decedent's injury is nevertheless compensable under the "personal comfort" doctrine.

▆▆▆ In a fatal claim petition, the surviving family member bears the burden of proving all of the elements necessary to support an award under the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, 2501–2708. *Gibson v. Workers' Comp. Appeal Bd. (Armco Stainless & Alloy Products)*, 580 Pa. 470, 479, 861 A.2d 938, 943 (2004). To be entitled to benefits, Section 301(c)(1) of the Act, 77 P.S. § 411(1), requires that the surviving family member demonstrate that the decedent's injury arose in the course of employment and was causally related thereto.[2] There are two situations in which an injury may be sustained in the course of employment:

> The first is where the employee is injured, on or off the employer's premises, while furthering the employer's business. The second is where the employee, although not actually working, is on the premises under the employer's control; is required by the nature of his employment to be there; and sustains injuries as a result of the condition of the premises or operation of the business.

*Allegheny Ludlum Corp. v. Workers' Comp. Appeal Bd. (Hines)*, 913 A.2d 345, 348 (Pa.Cmwlth.2006), *appeal denied*, 593 Pa. 757, 932 A.2d 77 (2007), (citing *Workmen's Comp. Appeal Bd. (Slaugenhaupt) v. U.S. Steel Corp.*, 31 Pa.Cmwlth. 329, 376 A.2d 271 (1977)). Because Decedent was not injured on Employer's premises, this matter concerns only the first situation.

Accepting as fact, *arguendo*, that Employer approved Decedent's home-office as a secondary work premises, and that Decedent was working from his home-office on March 8, 2007, this case is factually analogous to this Court's decision in *Verizon Pennsylvania, Inc. v. Workers' Compensation Appeal Board (Alston)*, 900 A.2d 440, 444 (Pa.Cmwlth.2006), where we addressed specifically for the first time "the issue of workers' compensation coverage for employees who work at an 'at-home office' outside of the employer's primary work

court." *Leon E. Wintermyer, Inc. v. Workers' Comp. Appeal Bd. (Marlowe)*, 571 Pa. 189, 203, 812 A.2d 478, 487 (2002). "Capricious disregard is a deliberate disregard of competent evidence which one of ordinary intelligence could not possibly have avoided in reaching the result." *Southwest Airlines/Cambridge Integrated Serv. v. Workers'*

*Comp. Appeal Bd. (King)*, 985 A.2d 280, 285 n. 4 (Pa.Cmwlth.2009).

**2.** Whether the decedent was in the course and scope of his employment at the time of his injury or death is a question of law subject to *de novo* review. *Wachs v. Workers' Comp. Appeal Bd. (Am. Office Sys.)*, 584 Pa. 478, 484, 884 A.2d 858, 862 (2005).

office." There, the claimant worked three days a week from the employer's office in New Jersey and two days a week from an office in the basement of her home. On a day that the claimant was working from home, the claimant was drinking a glass of juice in her kitchen when she received a work-related telephone call from her supervisor. Determining that the subject of the telephone call required immediate attention, the claimant, still on the telephone, began descending the stairs to the basement to return to her home-office. On the descent down, the claimant fell, injuring her neck. *Id.* at 442. The claimant then filed a claim petition, which the employer opposed. The WCJ awarded benefits, and the Board later affirmed. *Id.* at 443. Thereafter, the employer appealed to this Court, arguing, *inter alia,* that the claimant was not in furtherance of the employer's business or affairs at the time of injury—*i.e.,* the claimant was not injured in the course and scope of her employment—because the claimant had left her home-office in the basement to get a drink in the kitchen. *Id.* at 444. In determining that the claimant was injured in the course and scope of her employment, we stated:

> When an employee files a claim for injuries occurring somewhere other than the employer's premises, the Courts have generally evaluated these claims by distinguishing between stationary and traveling employees. For "travelling" employees, temporary departures from the work routine for the purpose of administering to the comforts of an off-the-premises employee, including authorized breaks for lunch, will not interrupt the continuity of the employee's course of employment. However, when a "stationary" employee leaves the employer's premises during authorized breaks for personal reasons, *i.e.,* reasons unrelated to her required job duties, the employee

is not within the course of her employment.

> Here, Claimant was not "traveling"; she was working at her "home office," a fixed location approved by Employer as her secondary work premises. Unlike the facts of the cases cited by Employer, however, Claimant did not leave the premises where she was authorized to work. . . .

> In addition, there is a well established "personal comfort" doctrine under which an employee who sustains an injury during an inconsequential or innocent departure from work during regular working hours, such as going to the bathroom, is nonetheless considered to have sustained an injury in furtherance of the employer's business.

> . . . .

> . . . In the case at bar, we note that Claimant suffered her injury during her normal working hours at her "at-home" work site, which was approved by Employer, and the injury occurred while talking on the telephone with her supervisor and returning to her computer to attend to a business matter that the supervisor called to discuss, which she interpreted as needing immediate attention. Thus, under the specific facts of this particular case, Claimant was clearly engaged in furthering Employer's business at the time she was injured, despite the fact that she had briefly departed from her work station to attend to her personal comfort.

*Id.* at 444–47 (citations and quotations omitted).

Sadly, unlike *Alston,* where the specific circumstances surrounding the claimant's injury were clear, little is known about the circumstances surrounding Decedent's injury in the present matter. The evidence of record demonstrates only that Decedent

was injured sometime between 11:30 a.m. and 2:00 p.m.; that Decedent's eyeglasses and traces of Decedent's blood were found near the front entry of the house; that Decedent's cell phone and traces of Decedent's blood were found in the first-floor bathroom; and that Claimant discovered Decedent to be unresponsive, sitting at his desk in his home-office, at approximately 2:00 p.m. The record is unclear as to how Decedent was injured, where Decedent was injured, and at what specific time Decedent was injured. Perhaps more importantly, even if the cause, location, and time of Decedent's injury were established, there is nothing in the record demonstrating what Decedent was doing when he was injured. Claimant's proffered explanation that Decedent slipped and hit his head while outside smoking a cigarette—*i.e.*, attending to his personal comfort—or retrieving business mail is speculative at best. (*See* R.R. at 291a–92a, 317a.) The WCJ and the Board, therefore, did not err in determining that Claimant failed to establish that Decedent was injured in the course and scope of his employment.

Accordingly, we affirm.

### ORDER

AND NOW, this 1st day of September, 2011, the order of the Workers' Compensation Appeal Board, issued December 14, 2010, is hereby AFFIRMED.

DISSENTING OPINION BY Senior Judge FRIEDMAN.

I respectfully dissent. The majority holds that Brenda Werner (Claimant) failed to establish that Donald Werner, Deceased (Decedent), was in the course

and scope of his employment when he was injured on March 8, 2007.[1] For the following reasons, I cannot agree.

Decedent worked for Greenleaf Services Corporation (Employer) as an international sales manager. When Decedent was not traveling, he worked either in Employer's Saegertown office or from his home office. On March 8, 2007, Decedent had taken sick leave to attend medical appointments for a cut on his hand, but he was able to perform some work from his home office, including phone calls and emails. Sometime between 11:30 a.m. and 2:00 p.m., i.e., during lunch hour, Decedent took a break. During that time period, he went outside the front door of his house and fell, injuring his head. He left his glasses on the ground and went inside to the bathroom to wash away the blood. He then returned to his home office, leaving his cell phone in the bathroom. He was discovered by Claimant, unresponsive in his desk chair.

The WCJ stated: "The fact that he may have read some emails or made some business phone calls does not establish that he was in the course and scope of his employment **at any time** on Ma[rch] 8, 2007 let alone at the time he was injured and died." (WCJ's Findings of Fact, No. 14) (emphasis added). However, there is no question that Decedent was furthering Employer's business, and in the course and scope of this employment, while he was engaged in work-related phone calls and work-related emails. *See Verizon Pennsylvania, Inc. v. Workers' Compensation Appeal Board (Alston)*, 900 A.2d 440 (Pa.Cmwlth.2006) (holding that the claimant was injured in the course and scope of her employment

---

1. In so holding, the majority states that the "record is unclear as to how Decedent was injured, where Decedent was injured, and at what specific time Decedent was injured." (Majority Op. at 252.) However, in my view, the evidence establishes that Decedent sustained a head injury when he fell outside his home during a break while working in his home office.

when she fell while talking on the phone with her supervisor at home, where she had a home office). The WCJ's statement to the contrary constitutes an error of law.

The WCJ also stated that the "fact that [Decedent] was sitting in a chair in his home office when he was discovered by his wife is not enough to prove he was in the course and scope of his employment at the time of his injury." (WCJ's Findings of Fact, No. 13.) However, this statement is based on the above error of law, i.e., that Decedent was not previously in the course and scope of employment. If the WCJ had properly concluded that Decedent was in the course and scope of his employment during the morning hours, the WCJ might have considered differently whether Decedent's return to his home office after a lunch break, and an injury, meant that Decedent continued in the course and scope of employment.[2]

If the WCJ had found that Decedent intended to continue doing some work in his home office after the injury, the next question would have been whether Decedent was in the course and scope of employment during the break, when he was injured outside his home. If Decedent had been in the Saegertown office and was injured during a break on Employer's premises, Decedent would have been in the course and scope of his employment at the time of the injury. If Decedent had been traveling and was injured during a personal comfort break anywhere, Decedent would have been in the course and scope of his employment at the time of the injury.

An employee working in a home office is a stationary employee, not a traveling employee, and is not technically on the employer's premises. However, where, as here, an employer has approved an employee's use of a home office, I submit that the home office is the equivalent of the employer's premises. Thus, when the employee is injured while taking a break at home, he has not abandoned his work but, rather, remains in the course and scope of employment. *See Verizon*, 900 A.2d at 445 (stating that, under the personal comfort doctrine, an employee who sustains an injury at work during an inconsequential or innocent departure from work during regular working hours is considered to have sustained an injury in furtherance of the employer's business).

Because the WCJ's critical findings are based on an error of law, I would vacate and remand for new findings of fact and conclusions of law.

---

2. Although Decedent had taken sick leave for medical appointments for a cut on his hand, the sick leave obviously did not prevent Decedent from doing work in his home office.