**ALLEGHENY LUDLUM CORPORATION,**
Petitioner

v.

**WORKERS' COMPENSATION APPEAL BOARD (HINES),**
**Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 6, 2006.

Decided Dec. 19, 2006.

Lawrence J. Baldasare, Pittsburgh, for petitioner.

John E. Quinn, Pittsburgh, for respondent.

BEFORE: COLINS, President Judge, and SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Allegheny Ludlum Corporation (Employer) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) affirming the decision of a Workers' Compensation Judge (WCJ) to grant fatal claim benefits to Kimberly Hines (Claimant) for the work-related death of her husband, Daniel Hines (Decedent). Decedent was killed when he was struck by a drunk driver while walking on a public sidewalk towards the plant gate to report to his shift. We are asked to consider whether these circumstances support the Board's conclusion that the death was work-related. For the reasons that follow, we affirm.

Decedent was employed by Employer as a roll turner[1] in Department No. 3 of Employer's Brackenridge plant and was working the 7:00 a.m. to 3:00 p.m. shift at the time of his death. Shortly after 6:30 a.m. on the morning of February 12, 2003, Decedent arrived at the plant and parked his car in Employer's lot near Gate 7 of the plant. However, Decedent did not enter the plant at Gate 7 because he "punched in" at Gate 5. To reach his punch in station at Gate 5, Decedent had to leave the Gate 7 lot and walk on the sidewalk, owned by Employer, that runs along River Road. Decedent was doing so when, at approximately 6:38 a.m., a pickup truck crossed the center line of River Road, jumped the curb and fatally struck Decedent. The driver of the pickup truck, who was intoxicated, fled the scene but was later found and arrested. On August 4, 2003, the driver was convicted of a series

---

1. Roll turners continually monitor and align rolls to ensure that steel is rolled in the correct gauge. Reproduced Record at 158a. (R.R. ——).

of crimes, including vehicular homicide, for the conduct that caused Decedent's death.[2]

On April 10, 2003, Claimant filed a fatal claim petition seeking compensation for herself and for Decedent's dependent children. Employer opposed the petition, and a hearing ensued.

In support of her petition, Claimant testified that she and Decedent were married on July 31, 1982. She further explained that she and Decedent resided together with their two children and that she and their children were economically dependent on Decedent at the time of his death.

Claimant also presented the deposition testimony of two witnesses to the accident, who saw Decedent park in Employer's lot at Gate 7 and either saw, or heard, the terrible accident. Another witness, Ronald Sadowski, a twenty-six year employee, testified that Employer had instructed employees in various safety meetings throughout the years that they could not enter at Gate 7 and walk through the plant to reach Gate 5. Instead, they were directed to walk down the steps from the parking lot at Gate 7 to the River Road sidewalk and enter the plant at Gate 5. Joseph Clark, a shop steward who worked with Decedent in Department No. 3, also testified for Claimant. He confirmed that management had instructed him to park in the lot at Gate 7 and walk along the sidewalk next to River Road in order to enter the plant at Gate 5. James Negley, another shop steward, supplied similar testimony.

In response, Employer presented the testimony of David Morris, manager for hourly staffing. He stated that hourly employees, such as Decedent, could park in any one of four parking lots adjacent to the different plant gates. Further, employees were free to park on the street, and it was a matter of employee convenience how they traveled to work and where they parked. Morris explained that Decedent was assigned to enter the plant at Gate 5 because that was the gate where Decedent's time card was located. However, employees were free to request a change of gate. Morris testified that of the 19 roll-turners employed at the plant, eleven punched in at Gate 2 and eight entered the plant at Gate 5. However, only four of the employees using Gate 2 worked in Department No. 3, as did Decedent. Morris also confirmed that Decedent could not enter the plant at Gate 7.

After reviewing the evidence presented, the WCJ concluded that Decedent was furthering Employer's business on Employer's premises at the time of his death. The WCJ granted Claimant's fatal claim petition. The Board affirmed the award of benefits, and the present appeal followed.

On appeal,[3] Employer presents two issues for our consideration. First, it contends that the Board erred in concluding Decedent was furthering the business of Employer at the time of his death. Second, it contends the Board's adjudication violates sound public policy because it

---

2. The driver, Dusty Hank, was convicted of the following: homicide by vehicle; involuntary manslaughter; accidents involving death or serious injury; driving under the influence of alcohol or a controlled substance; reckless driving; driving upon the sidewalk; driving vehicle at an unsafe speed and driving on the wrong side of roadway. The parties stipulated that the criminal conduct of Hank caused Decedent's death on February 12, 2003.

3. Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence or whether constitutional rights were violated. *Allegis Group (Onsite) v. Workers' Compensation Appeal Board (Henry)*, 882 A.2d 1, 3 n. 1 (Pa.Cmwlth.2005).

holds Employer vicariously liable for the criminal act of a third party.

■ We begin with a review of the relevant statutory provision and the case law interpreting it. Whether a claimant's injury occurred in the course of his employment is governed by Section 301(c)(1) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 411(1). It states, in relevant part, as follows:

> The term "injury arising in the course of his employment," as used in this article, shall include all other *injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer,* whether upon the employer's premises or elsewhere, and shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employe's presence thereon being required by the nature of his employment.

77 P.S. § 411(1) (emphasis added). Section 301(c)(1) thus establishes that an injury will be found compensable in two different circumstances. The first is where the employee is injured, on or off the employer's premises, while furthering the employer's business. The second is where the employee, although not actually working, is on the premises under the employer's control; is required by the nature of his employment to be there; and sustains injuries as a result of the condition of the premises or operation of the business. *Workmen's Compensation Appeal Board (Slaugenhaupt) v. U.S. Steel Corporation,* 31 Pa.Cmwlth.329, 376 A.2d 271 (1977).

In its first argument, Employer argues that the Board erred in determining that Decedent's fatal injuries arose "in the course of his employment." Section 301(c)(1) of the Act, 77 P.S. § 411(1). Employer concedes that Decedent was on its premises at the time of the accident. However, Employer contends that Decedent was not furthering its business when he was killed and, thus, Claimant had the burden of meeting the three-part test *Slaugenhaupt* established for cases where an employee is injured on the employer's premises but not furthering employer's business at the time of the accident. This burden, Employer asserts, was not satisfied by Claimant.

Employer argues that precedent in this area supports its theory that Claimant was not killed in the course of his employment. It points first to *Kmart Corporation v. Workers' Compensation Appeal Board (Fitzsimmons),* 561 Pa. 111, 748 A.2d 660 (2000), wherein a claimant who was injured during her lunch break in a public restaurant located on the employer's premises was found not to be furthering employer's business. Employer also cites *Giebel v. Workmen's Compensation Appeal Board (Sears Roebuck & Co.),* 41 Pa.Cmwlth.333, 399 A.2d 152 (1979), wherein an employee who slipped and fell while shopping at her employer's store during her lunch break was found not to be injured in the course of her employment. Finally, Employer draws our attention to *Anzese v. Workmen's Compensation Appeal Board (Strick Corporation),* 35 Pa.Cmwlth.256, 385 A.2d 625 (1978), where an employee, killed by a bolt of lightning sitting on his motorcycle while still in the employer's parking lot shortly after punching out, was found not to have been killed in the course of employment.

We agree with Employer that on their bare facts, these holdings are difficult to

reconcile with the Board's holding here. What Employer fails to appreciate, however, is that in all the cases it cites, the issue of whether the claimant was furthering the business of the employer at the time of injury was never raised. Instead, the only issue was whether the claimant was entitled to benefits under the three-part *Slaugenhaupt* test because it was conceded that the claimant was not furthering the employer's business at the time of injury. Further, Employer fails to appreciate that the three-part *Slaugenhaupt* test is not the one to apply simply because the employee has not yet punched in at the moment of injury.

This Court has established that "[e]ven though not actually engaged in employer's work, an employee will be considered to have suffered an injury 'in the course of employment' if the injury occurred on the employer's 'premises' at a reasonable time before or after the work period." [4] *Newhouse v. Workmen's Compensation Appeal Board (Harris Cleaning Service, Inc.)*, 109 Pa.Cmwlth.96, 530 A.2d 545, 547 (1987). We have held that arrival 15 to 30 minutes prior to the time a claimant is to begin work is a "reasonable time" and, therefore, during that time the claimant is considered to be advancing the employer's business. *Fashion Hosiery Shops v. Workmen's Compensation Appeal Board*, 55 Pa. Cmwlth. 465, 423 A.2d 792, 797 (1980). We have explained that the *Newhouse* holding

> inherently implies that once an employee is on the Employer's premises, actually getting to or leaving the employee's work station is a necessary part of that employee's employment, and thus, definitively furthering the employer's interests.

*Motion Control Industries v. Workmen's Compensation Appeal Board (Buck)*, 145 Pa.Cmwlth.399, 603 A.2d 675, 678 (1992) (expressly rejecting the employer's argument that all parking lot injuries are governed by the three-part *Slaugenhaupt* test).[5] Employer also overlooks *Epler v. North American Rockwell Corporation*, 482 Pa. 391, 393 A.2d 1163 (1978), which awarded fatal claim benefits where the employee was killed crossing a street on his way to his assigned parking lot approximately 30 minutes after ending his shift.[6]

■■■■ Here, on the day of the fatal accident, Decedent arrived with other em-

---

**4.** An employer's premises include those areas that are an integral part of employer's property used by the employees in the performance of their assigned tasks. The actual ownership of the area is not necessarily determinative of the question. *Epler v. North American Rockwell Corporation*, 482 Pa. 391, 398, 393 A.2d 1163, 1166 (1978). The critical factor is not the title or control over the area, but the fact that the employer has caused the area to be used by its employees in performance of their assigned tasks. *Id.* at 399, 393 A.2d at 1167. An employer's premises include reasonable means of access to the situs of an employer's business, even if the employer parking lot is separated from the employer's actual business operations by a public thoroughfare. *Id.* at 396, 393 A.2d at 1165; *Schofield v. Workmen's Compensation Appeal Board*, 39 Pa. Cmwlth. 282, 395 A.2d 328 (1978).

**5.** Employer contends that our holding in *Motion Control* was dependent upon the factual circumstance that because the claimant was a supervisor he was always furthering Employer's business when on the premises. We disagree with this narrow reading of *Motion Control* that the difference in job responsibility impacts the above-recited principle, *i.e.*, that moving to the "employee's work station is a necessary part of that employee's employment." *Motion Control*, 603 A.2d at 678.

**6.** Employer argues that *Epler* is inapposite because Decedent was not required to park in the lot at Gate 7. This may be, but Claimant had no choice about how to reach Gate 5 once he parked in the lot at Gate 7.

ployees and parked in Employer's parking lot approximately 20 to 25 minutes prior to the start of the work day. Decedent was walking towards Gate 5 with other employees to report for his shift when he was fatally injured on the sidewalk along River Road, the only authorized route from the Gate 7 parking lot to Gate 5. Moving toward one's work station within a reasonable period of time before the beginning of one's work period is considered to be a necessary part of employment. *Motion Control,* 603 A.2d at 678. The Board did not err in determining that Decedent was furthering the business interests of Employer at the time of his death.[7]

Employer next contends that as a matter of sound public policy it should not be responsible for the death of an employee caused by the criminal actions of a third party prior to the commencement of Decedent's work shift. Claimant argues that the personal animus exception to compensability does not apply because the driver did not intend to kill Decedent.

 Section 301(c)(1) of the Act, 77 P.S. § 411(1),[8] establishes what is commonly known as the "personal animus" exception to compensability of an injury that occurs at the workplace. The party raising the personal animus defense has the burden of proof. *Heath v. Workers' Compensation Appeal Board (Pennsylvania Board of Probation and Parole),* 580 Pa. 174, 181, 860 A.2d 25, 29 (2004). The personal animus exception will rebut the presumption that an injury that occurs on the employer's premises is work-related. *Helm v. Workmen's Compensation Appeal Board (U.S. Gypsum Company),* 139 Pa. Cmwlth.587, 591 A.2d 8, 10 (1991).*

Employer does not assert the personal animus exception, as supposed by Claimant. Rather, Employer invites this Court to recognize, as a matter of policy, that compensation should not be awarded where the injury is caused by the drunken and reckless operation of a vehicle by a party over whom Employer has no control. In support, Employer argues that "there is no case law in Pennsylvania that directly addresses the compensability of a death [of] an employee caused by a criminal act of a third-party prior to the commencement of the employee's work shift and *while the employee was not engaged in the furtherance of the business or affairs of the employer.*" Employer's Brief at 19 (emphasis added). Employer argues from the premise that Decedent was not furthering Employer's business. However, we have affirmed the Board's holding that Claimant was furthering the business of Employer at the moment of his death. Because Employer's public policy argument follows from a premise that has been rejected and does not relate to any provision of the Act, it must fail.

For these reasons, the decision of the Board is affirmed.

### ORDER

AND NOW, this 19th day of December, 2006, the order of the Workers' Compensation Appeal Board in the above-captioned

---

7. Because we conclude that the Board did not err in concluding that Decedent was furthering the business interest of Employer at the time of his death, we reject Employer's argument that claimant was required to satisfy the three-part *Slaugenhaupt* test.

8. Section 301(c)(1) states in relevant part:

The term "injury arising in the course of his employment," as used in this article, shall not include an injury caused by an act of a third person intended to injure the employe because of reasons personal to him. 77 P.S. § 411(1).

matter, dated April 26, 2006, is hereby affirmed.