# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Starr Aviation,                       :

           Petitioner         :

                               :    No. 659 C.D. 2016

          v.                 :

                               :    Submitted: October 7, 2016

Workers' Compensation Appeal    :

Board (Colquitt),                 :

           Respondent    :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                  HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION BY
JUDGE McCULLOUGH                     FILED: March 7, 2017

Starr Aviation (Employer) petitions for review of the March 30, 2016 decision of the Workers' Compensation Appeal Board (Board), affirming the order of a workers' compensation judge (WCJ) that granted the claim petition filed by Modesty Colquitt (Claimant). We affirm.

Claimant worked for Employer as a "ramp agent lead" at Pittsburgh International Airport. (WCJ's Finding of Fact at No. 1.) Her job duties consisted of driving a tug with a cart (a vehicle used to transport luggage bags), unloading and reloading baggage on to airplanes, and dropping bags off at a belt so that passengers could retrieve them. Claimant performed most of her duties at the Airside Terminal, apparently where airplanes depart, but sometimes had to travel to the Landside Terminal, where travelers check in, to deliver bags to an area described as the matrix. *Id.* at Nos. 1-2.

On September 2, 2014, Claimant, who was twenty-one years old at the time, arrived at work to begin her 2:00 p.m. to 11:00 p.m. shift. Claimant had started her menstrual cycle after she left home and realized that she had forgotten her wallet when she arrived at work. Claimant called her mother around 2:30 p.m. and requested that she bring feminine products and money to Claimant's work. At approximately 8:30 p.m. to 9:00 p.m., Claimant drove a tug from the Airside Terminal to the Landside Terminal to meet her mother. Claimant's supervisor had given her permission to do so. Claimant's mother brought feminine hygiene products, lunch money, TV dinners, and cigarettes and parked her car near the Landside Terminal. While Claimant was driving the tug to meet her mother, it flipped and trapped her left leg. An ambulance transported Claimant to the hospital where her left leg was amputated in the area above the ankle and below the knee. *Id.* at Nos. 5-7.

In September of 2014, Claimant filed a claim petition alleging that she suffered injuries while in the course and scope of her employment with Employer. Employer issued a notice of compensation denial stating, in part, that Claimant's injury was not within the course of her employment. The WCJ convened a hearing.

Claimant testified to the facts recited above. In opposition, Employer presented the testimony of Lyn Brett, Claimant's co-worker. Brett stated that, on the day of the accident, she saw Claimant in the break room around 6:00 p.m. and Claimant said that she had cramps and was hungry. Brett testified that she offered Claimant some food and money, but Claimant said that her mother was bringing her food and money. Brett added that she believed that the restroom and break room contained feminine products. *Id.* at No. 11.

Employer also presented the testimony of another co-worker, Dan Gordon, who stated that he was working as a "wingman" with Claimant and that she

2

operated the tug "entirely too fast" on the date of the accident. *Id.* at No. 12. Finally, Employer submitted the testimony of Daniel Butler, a ramp lead for a different crew. Butler stated that, during a break, Claimant offered him crackers. *Id.* at No. 13.

In a decision dated January 7, 2015, the WCJ found Claimant's testimony credible and convincing. The WCJ found that Claimant forgot her wallet, started her menstrual cycle on September 2, 2014, while at work, needed feminine products and money, and called her mother to deliver such products and money to her at the airport. *Id.* at No. 14(c)-(e). Notably, the WCJ found that "[C]laimant's job performance would be affected by her menstrual cycle and would be adversely affected if she did not have feminine products to address the situation." *Id.* at No. 14(d). The WCJ further found that Claimant asked for and received permission from her supervisor to take a tug to meet her mother at the Landside Terminal and that Claimant's injury occurred on Employer's premises. *Id.* at No. 14(f), (h).

Based on these findings, the WCJ determined that Claimant's temporary departure from performing work to administer to her personal needs did not take her out of the course of her employment. The WCJ found that Claimant's departure from work was temporary, Claimant had permission to engage in this departure, and the departure was for the purpose of attending to personal needs and comfort that would allow her to continue her shift with Employer. Therefore, the WCJ concluded, Claimant remained in the course of her employment pursuant to the "personal comfort doctrine." *Id.* at No. 14(g)-(i).

In rendering her decision, the WCJ made the following assessment of the testimony of Employer's witnesses: "While considered, I do not find [Employer's] witnesses testimony to be relevant to the issues in this matter." *Id.* at No. 15. More specifically, the WCJ found that Brett's testimony regarding the availability of feminine products for purchase in the rest and break rooms was "inconsequential;"

3

that Gordon's testimony about Claimant using the tug "too fast" was "immaterial;" and that Butler's testimony that Claimant offered him snacks was also "immaterial." *Id.* at No. 15.

Having made these credibility determinations and factual findings, the WCJ granted Claimant's claim petition, concluding that she had been totally disabled since the date of her injury, September 2, 2014.

On appeal, the Board affirmed, and Employer filed a petition for review with this Court.[1]

In its first argument, Employer contends that the WCJ erred in concluding that the personal comfort doctrine applies in this case because Claimant's conduct does not constitute a small or temporary departure from her work activities and she was furthering her own interests. We disagree.

Section 301(c)(1) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §411(1), provides that an injury must occur in the course of employment and be causally related thereto in order for the injury to be compensable. The courts have developed two tests that are used to determine whether an injury was sustained in the course of employment. Under the first test, which is the only one we address and apply in the present matter, the question is whether the employee was actually engaged in the furtherance of the employer's business or affairs, regardless of whether the employee was upon the employer's premises. *Kmart Corporation v. Workers' Compensation Appeal Board (Fitzsimmons)*, 748 A.2d 660, 664 (Pa. 2000); *Marazas v. Workers' Compensation*

---

[1] Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether findings of fact were supported by substantial evidence. *Meadow Lakes Apartments v. Workers' Compensation Appeal Board (Spencer)*, 894 A.2d 214, 216 n.3 (Pa. Cmwlth. 2006).

*Appeal Board (Vitas Healthcare Corporation)*, 97 A.3d 854, 862 (Pa. Cmwlth. 2014).[2]

The issue whether an employee is acting in the course of his or her employment at the time of an injury is a question of law, which must be based on the WCJ's findings of fact. *Trigon Holdings, Inc. v. Workers' Compensation Appeal Board (Griffith)*, 74 A.3d 359, 362 (Pa. Cmwlth. 2013). Typically, "[a]n activity that does not further the affairs of the employer will take the employee out of the course and scope of employment and serve as a basis for denial of the claim by the WCJ." *Wetzel v. Workers' Compensation Appeal Board (Parkway Service Station)*, 92 A.3d 130, 136 (Pa. Cmwlth. 2014) (citation omitted). However, "it is well established that an employee is considered to have sustained an injury while actually engaged in the furtherance of an employer's business interests and affairs, where the injury occurred during inconsequential or innocent departure from work within the regular working hours." *US Airways v. Workers' Compensation Appeal Board (Dixon)*, 764 A.2d 635, 642 (Pa. Cmwlth. 2000).

More specifically, in discussing what has been referred to as the personal comfort doctrine, our Court has explained:

> '[C]ourse of employment' embraces intervals of leisure within regular hours of the working day and that momentary departures from the work routine do not remove an employee from the course of his employment . . . . Breaks which allow the employee to administer to his personal comfort better enable him to perform his job and

---

[2] Parenthetically, under the second test, the employee need not be engaged in the furtherance of the employer's business or affairs, however, the employee: (1) must be on the premises occupied or under the control of the employer, or upon which the employer's business or affairs are being carried on; (2) must be required by the nature of his employment to be present on the premises; and (3) must sustain injuries caused by the condition of the premises or by operation of the employer's business or affairs thereon. *Kmart*, 748 A.2d at 664; *Marazas*, 97 A.3d at 862.

are therefore considered to be in furtherance of the employer's business.

*Id.*

And one treatise further elucidated:

The personal comfort doctrine, common to all workers' compensation laws, holds that the employee whether on the premises or off, does not stray from the course of employment for a momentary departure from active work to attend to some 'personal comfort' such as using the restroom, fixing one's hair, or changing contact lenses or make-up.

David Torrey and Andrew E. Greenburg, *Workers' Compensation: Law and Practice* §4:76 (3d ed. 2008); *see Verizon Pennsylvania, Inc. v. Workers' Compensation Appeal Board (Alston)*, 900 A.2d 440, 445 (Pa. Cmwlth. 2006).

Here, Claimant testified that it would have taken her less than ten minutes to meet her mother and retrieve the items she delivered. (Reproduced Record (R.R.) at 73a-74a.) According to the WCJ's findings of fact, the motivating impetus for Claimant's mother's trip to Employer's Landside Terminal was to deliver feminine products to Claimant. *See* WCJ's Finding of Fact at No. 14. As a matter of fact, the WCJ found that "[C]laimant's job performance would be affected by her menstrual cycle and would be adversely affected if she did not have feminine products to address the situation." *Id.* at No. 14(d). The WCJ further found that "[a]t the time of the injury, [C]laimant was attending to her personal comfort so that she could continue to serve [Employer's] interest." *Id.* at No. 14(i). Given the underlying nature and extent of Claimant's departure via the tug, which was done with Employer's express permission, we conclude that Claimant's conduct fits squarely within the personal comfort doctrine. *See also Kramer v. City of Philadelphia*, 116 A.2d 280, 282 (Pa. Super. 1955) (concluding that police officer

6

was in the course of his employment when he was involved in an off-duty motorcycle accident because the officer "requested and was granted permission by his superior officer to use the motorcycle assigned to him as a means of transportation to and from his home and the police station to which he had to report.").

To be sure, an apt analogy can be made to *Montgomery Hospital v. Workers' Compensation Appeal Board (Armstrong)*, 793 A.2d 182, 187-88 (Pa. Cmwlth. 2002), wherein this Court concluded that an injury occurring while a claimant was using the bathroom facilities did not remove the claimant from his course of employment. As a matter of logic, if a break to use the restroom is within the parameters of the personal comfort doctrine, then so should be an authorized break to retrieve prescription medicines or certain personal items, such as feminine care products, that someone else delivers to the workplace for the employee. The common thread in these instances is that the employee, upon request and permission, is administering to his or her own health and comfort, taking measures that are reasonably necessary to alleviate a condition that could potentially interfere with an employee's ability to work and make the employee more effective in resuming and/or completing work duties. Although Claimant's mother seized the opportunity to also deliver money, food, and other personal items, this does not impact or alter our analysis because the WCJ clearly gave less weight to the necessity of these items and focused predominantly on the urgency of and need for the feminine care product. *See* WCJ's Finding of Fact at No. 14. As such, we conclude that the Board and the WCJ did not err in determining that Claimant, by virtue of the personal comfort doctrine, was furthering Employer's interest and affairs at the time of the injury.

Next, Employer argues that the WCJ erred in finding that Claimant was injured on Employer's premises. Having already concluded that Claimant was furthering Employer's business or affairs at the time of the accident, it does not

7

matter whether Claimant was injured on Employer's premises because the injury is compensable in either event. *See Workmen's Compensation Appeal Board (Slaugenhaupt) v. U.S. Steel Corporation*, 376 A.2d 271, 273 (Pa. Cmwlth. 1977) (stating that an injury is "in the course of employment . . . where the employee, whether on or off the employer's premises, is injured while actually engaged in the furtherance of the employer's business or affairs . . . .")

Employer also contends that the WCJ committed reversible error in dismissing the testimony of its witnesses as irrelevant and inconsequential. We disagree.

In an able fashion, the Board disposed of Employer's argument as follows:

> We do not interpret the WCJ's ruling as finding [Employer's] witnesses not credible, nor their testimony excluded from consideration due to a lack of competency . . . . [W]e conclude the WCJ was ruling that even if she were to fully credit the testimony of all three witnesses, as a matter of law, it does not change the outcome. [Employer] essentially argues that Claimant's departure from her employment for her personal comfort was unnecessary as co-employees offered to Claimant money to purchase food and the personal essentials Claimant required. [Employer] argues that the testimony of [its witnesses are] relevant because it establishes that Claimant was offered on site the essentials [she] required . . . .
>
> The WCJ fully credited Claimant's testimony as to the circumstances and reasons for her departure. In applying the personal comfort doctrine, [the WCJ] found no testimony of [Employer's witnesses] that rebutted Claimant's testimony. There was no testimony from the [witnesses] which make the reason for Claimant's temporary departure 'less probable.' Claimant's testimony alone, as the WCJ found, and we agree, was sufficient to legally meet the requirements of the personal comfort doctrine exception under the specified facts of this case . . . .

8

> [Employer] would seem to have us read into the requirement [a] judgment qualification as to whether or not the trip to meet her mother was necessary. As workers' compensation is 'no-fault' and there is no such precedent, we decline to impose one.

(Board's decision at 8-9.)

We agree with the Board. The WCJ expressly "considered," (WCJ's Finding of Fact No. 15), the testimony of Employer's witnesses but determined that the substance of said testimony pertained to a collateral issue, i.e., whether it was necessary for Claimant to meet her mother. Importantly, none of Employer's witnesses proffered testimony that would tend to negate, or call into question, the fact that Claimant began her menstrual cycle while at work. Pursuant to well-settled case law, it is immaterial whether a reasonable person in Claimant's shoes would have made other arrangements to meet her personal needs; indeed, any perceived fault in Claimant's decision to call and make arrangements with her mother is no defense to liability under the Act. *See Rox Coal Co. v. Workers' Compensation Appeal Board (Snizaski)*, 768 A.2d 384, 391 (Pa. Cmwlth. 2001) ("Employer attempts to inject fault and simple negligence into workers' compensation proceedings; however, the Act clearly does not recognize negligence as a defense."). Consequently, we find no merit to Employer's argument.

Finally, Employer contends that the WCJ and the Board erred in awarding Claimant total disability benefits rather than specific loss benefits.[3] However, Employer did not raise this specific issue in its appeal to the Board, nor could this issue be considered to have been reasonably encompassed within Employer's assertions of error. Indeed, in its appeal to the Board, Employer does not

---

[3] *See Schemmer v. Workers' Compensation Appeal Board (U.S. Steel)*, 833 A.2d 276, 278-79 & n.5 (Pa. Cmwlth. 2003), for a discussion of specific loss benefits under the Act.

even mention the words "specific loss benefits," and Employer cannot be said to have impliedly raised this legal issue by baldly challenging the WCJ's legal conclusion granting Claimant's claim petition and awarding her benefits. *See* R.R. at 219a ("The [WCJ] committed an error of law by finding that Claimant has met her burden of proof in the Claim Petition and in finding that Claimant is entitled to the receipt of temporary total disability benefits."). Consequently, we conclude that this issue is waived for purposes of this appeal. *See McGaffin v. Workers' Compensation Appeal Board (Manatron, Inc.)*, 903 A.2d 94, 100-01 (Pa. Cmwlth. 2006) (reiterating that, in order to properly preserve an issue for an appeal, "a party must specifically identify . . . the particular grounds being appealed to the Board," and finding issue waived where the claimant did not raise the issue "in any manner" to the Board).

Therefore, having concluded that Employer has not provided this Court with a legal basis upon which to disturb the Board's decision, we will affirm the Board's order affirming the WCJ's decision that granted Claimant's claim petition.[4]

_____
PATRICIA A. McCULLOUGH, Judge

---

[4] We nevertheless note that Employer confirms that Claimant has recently filed a review petition, alleging that she sustained injuries in addition to the amputation injury. (Employer's reply brief at 9.) Employer concedes that if this petition is granted, Claimant would be entitled "to ongoing disability benefits." *Id.*

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Starr Aviation,                                    :
                    Petitioner            :
                                :  No. 659 C.D. 2016
               v.                           :
                                :
Workers' Compensation  Appeal      :
Board (Colquitt),                              :
                   Respondent           :

## ***ORDER***

AND NOW, this 7th day of March, 2017, the March 30, 2016 order of the Workers' Compensation Appeal Board is hereby affirmed.

 

_____
PATRICIA A. McCULLOUGH, Judge