IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kathleen Lombardi,                          :
                     Petitioner             :
                                            :
        v.                                  :    No. 208 C.D. 2020
                                            :    SUBMITTED:  May 7, 2021
Workers' Compensation                       :
Appeal Board (UPMC                          :
Health Plan, Inc.),                         :
                     Respondent             :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                   FILED:  October 27, 2021

        Kathleen Lombardi (Claimant) petitions this Court for review of the January
28, 2020 order of the Workers' Compensation Appeal Board (Board), affirming the
decision of a workers' compensation judge (WCJ), who concluded that Claimant
was not entitled to benefits under the Workers' Compensation Act (Act),[1] as she had
not sustained an injury in the course of her employment.  After review, we reverse
the Board and remand this matter for further proceedings.

## I.  Background

        The underlying facts in this matter are largely undisputed.  Claimant worked
as a telephone nurse case manager for UPMC Health Plan, Inc. (Employer), in office
space located on the 37th floor of the U.S. Steel Tower (the Steel Tower) in
Pittsburgh, Pennsylvania.  Certified Record (C.R.), Item No. 10, Notes of Transcript
(N.T.), 10/2/18, at 7-8, 19.  On August 15, 2018, after entering the Steel Tower prior

_____
[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

to the start of her shift, Claimant fell and broke her forearm and wrist. *Id.* at 8-9. Claimant notified Employer of her injury that day. C.R., Item No. 2. Employer denied liability for Claimant's injuries through the issuance of a Notice of Workers' Compensation Denial. *Id.*, Item No. 13. Thereafter, Claimant filed a claim petition, seeking total disability benefits as of the date of her injury and ongoing. *Id.*, Item No. 2. Employer acknowledged that Claimant gave notice of the August 15, 2018 fall, and the injuries she allegedly sustained, but denied that Claimant was acting in the course of her employment at that time. *Id.*, Item No. 4.

By agreement of the parties, the WCJ held a bifurcated hearing on October 2, 2018, to address the issue of whether Claimant's injuries were sustained in the course of her employment.

Claimant testified that on August 15, 2018, she took the bus to work, arriving at the Steel Tower approximately 30 minutes prior to the start of her 8:00 a.m. shift. N.T., 10/2/18, at 10, 20. After entering the ground-floor level of the Steel Tower lobby, Claimant walked towards the downstairs escalator, with the intention of purchasing breakfast from a restaurant located in the basement food court. *Id.* at 9. To reach that escalator, Claimant walked past the upstairs escalator that led to the second-floor lobby level and the elevators servicing the upper floors of the Steel Tower. *Id.* at 21-22.

As Claimant approached the downstairs escalator, she tripped over an unknown object and fell, fracturing her right forearm and wrist. *Id.* at 8. She reported the injury to her direct supervisor and the Steel Tower security staff. *Id.* at 12.

Claimant related that she habitually purchased breakfast in the Steel Tower before her shift began. *Id.* at 9-10. Thereafter, she ate breakfast at her desk while

2

performing various pre-shift, work-related tasks. *Id.* Claimant chose to purchase breakfast at the restaurant in the basement food court "because [it was] close[,]" and she agreed that buying breakfast in the Steel Tower helped her get to work on time. *Id.* at 10. Accessing her cubicle on the 37th floor required that Claimant take the ground-floor upstairs escalator to the second floor of the lobby and pass through a security checkpoint to reach the upper-floor elevators. *Id.* at 23-24.

Employer submitted an affidavit from Frances Valasek, one of Employer's property managers, who verified that Employer does not have any ownership interest in the Steel Tower. C.R., Item No. 12. Employer does not lease, maintain, or otherwise have any responsibility for any portion of the Steel Tower's lobby levels, the basement level in which the food court is located, or the escalators and elevators that operate between those levels of the Steel Tower. *Id.* Rather, 600 GS Prop LP owns the Steel Tower and maintains the public portions of the Steel Tower's lobby levels, basement level, and the escalators and elevators that operate between those levels. *Id.*

The WCJ circulated his decision on February 4, 2019, denying and dismissing Claimant's claim petition. C.R., Item No. 5. He adopted as fact the representations of Claimant and Ms. Valasek, and he noted that the circumstances of Claimant's fall were undisputed. *Id.*, Finding of Fact (F.F.) No. 9. The WCJ acknowledged that, but for her employment, Claimant would most likely not have been in the Steel Tower on August 15, 2018, and she was "arguably" on Employer's premises when she fell. *Id.*, Conclusion of Law (C.O.L.) No. 3. Claimant failed to demonstrate, however, that her presence was required by the nature of Employer's business operations. *Id.* Instead, she was engaged in a "wholly personal errand" to purchase breakfast prior to the start of her 8:00 a.m. shift. *Id.* This task was not necessitated

3

by Claimant's employment or the completion of her job duties, and there was no evidence to suggest that Claimant was purchasing breakfast at Employer's direction. *Id.* As a result, Claimant failed to establish that she suffered an injury in the course of her employment. *Id.*, C.O.L. No. 2.

Claimant appealed to the Board, which affirmed. In the instant appeal,[2] Claimant argues that the Board erred in affirming the WCJ, as she was injured on Employer's premises, her presence there was required by, and beneficial to, Employer, and Claimant was engaged in the furtherance of Employer's business at the time of her injury.

## II. Discussion

To be compensable under Section 301(c)(1) of the Act,[3] an employee's injury must arise in the course of employment and be related thereto. *Workmen's Comp. Appeal Bd. (Slaugenhaupt) v. U.S. Steel Corp.*, 376 A.2d 271, 273 (Pa. 1977). An injury arising in the course of employment includes one sustained while an employee is "actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere[.]" 77 P.S. § 411(1). An injury arising in the course of employment also includes "all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon," which are sustained by an employee who, although not working at the time, is "injured upon the premises occupied by or under the control of the employer, or

---

[2] Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether findings of fact are supported by substantial evidence. *Starr Aviation v. Workers' Comp. Appeal Bd. (Colquitt)*, 155 A.3d 1156, 1159 n.1 (Pa. Cmwlth. 2017). Whether an employee is acting in the course of her employment at the time of an injury is a question of law, based on the WCJ's findings of fact. *Id.* at 1160.

[3] 77 P.S. § 411(1).

upon which the employer's business or affairs are being carried on," if the employee's presence is required by the nature of her employment. *Id.*

In essence, an injury is compensable under Section 301(c)(1) in two circumstances. An employer is liable in the first circumstance where the employee is injured, on or off the employer's premises, while "actually engaged in the furtherance of the [employer's] business or affairs . . . ." 77 P.S. § 411(1); *Allegheny Ludlum Corp. v. Workers' Comp. Appeal Bd. (Hines)*, 913 A.2d 345, 348 (Pa. Cmwlth. 2006). While this phrase must be liberally construed in accordance with the humanitarian purposes of the Act, a claimant must still show that she was acting for the employer's benefit and convenience and not simply commuting to or from her place of employment. *Simko v. Workers' Comp. Appeal Bd. (U.S. Steel Corp.– Edgar Thomson Works)*, 101 A.3d 1239, 1242 (Pa. Cmwlth. 2014). An employee's injury may be compensable under the so-called personal care doctrine if it was sustained in the furtherance of an employer's business interests and affairs and the injury occurred during an inconsequential or innocent departure from work "within the regular working hours." *Starr Aviation*, 155 A.3d at 1160.

Liability under the second circumstance is assigned if an employee, although not engaged in her work at the time of injury: (1) is on the premises under the employer's control; (2) is required by the nature of her employment to be there; and (3) sustains injuries due to a condition of the premises or operation of the business. *Slaugenhaupt*, 376 A.2d at 273. An employer's premises under Section 301(c)(1) of the Act is not limited to property that the employer legally owns or controls; common areas in multi-unit office buildings may be considered part of an employer's premises if they constitute a reasonable means of ingress to, or egress from, the workplace. *US Airways, Inc. v. Workers' Comp. Appeal Bd. (Bockelman)*,

221 A.3d 171, 176 (Pa. 2019). Once an employee is on the employer's premises, "actually getting to or leaving the employee's workstation is a necessary part of employment, which is definitively furthering the employer's interests." *Allegheny Ludlum Corp.*, 913 A.2d at 349. Moreover, any injury sustained by an employee up until the time she leaves the employer's premises is compensable, provided it is reasonably proximate to her work hours. *Epler v. N. Am. Rockwell Corp.*, 393 A.2d 1163, 1165 (Pa. 1978). A claimant's arrival on the employer's premises 15 to 30 minutes prior to the start of her shift is a "reasonable time[,]" during which a claimant is considered to be advancing her employer's business. *Allegheny Ludlum Corp.*, 913 A.2d at 349. Satisfaction of the third prong of the *Slaugenhaupt* test only requires a showing that a condition of the premises, or operation of the employer's business, caused the work injury; a claimant is not required to demonstrate that her injuries were the result of a faulty condition of the premises, or negligent operation of the business. *Thomas Jefferson Univ. Hosp. v. Workmen's Comp. Appeal Bd. (Cattalo)*, 601 A.2d 476, 479 (Pa. Cmwlth. 1991).

With these legal precepts in mind, we first address whether Claimant is entitled to benefits under the first circumstance because she was acting in furtherance of Employer's business at the time she fell. Citing this Court's decision in *U.S. Airways v. Workers' Compensation Appeal Board (Dixon)*, 764 A.2d 635 (Pa. Cmwlth. 2000), Claimant argues that the basement food court is "the only place" where she could procure breakfast, given her pre-shift duties and the time required for her to enter the Steel Tower, ride the escalator to the second-floor lobby level, pass through security, take the elevator to the 37th floor, and walk to her cubicle. Claimant's Br. at 24. Claimant contends that she should not be penalized for her attempt at efficiency by purchasing breakfast first before traveling to her desk.

Claimant's reliance on *Dixon* is misplaced, as that matter is clearly distinguishable. The claimant in *Dixon* elected to forgo a lunch break because she had pressing matters on her desk, and she wished to remain available to assist her co-workers. *Dixon*, 764 A.2d at 641. Instead, she ordered takeout food and, upon her return to the office, sustained an injury on the first floor of the building. *Id.* at 641-42. We held that this "momentary, inconsequential and innocent departure from the work area during the regular working hour" to purchase her takeout lunch did not break the "chain of conduct in the course of her employment." *Id.* at 642.

Instantly, Claimant was not injured during a momentary departure from her work area during her regular working hours. Rather, prior to the start of her shift, Claimant fell while walking towards the downstairs escalator with the intention of purchasing breakfast in the basement food court. The WCJ's finding that Claimant's actions were taken wholly for her own convenience is amply demonstrated by her admission that she chose the food court restaurant "because [it was] close." N.T., 10/2/18, at 10. While the WCJ accepted Claimant's testimony that she was required to perform certain tasks prior to the start of her shift, there is no evidence to suggest that Employer required Claimant to eat breakfast at her desk or that Employer's business requirements prohibited Claimant from eating prior to her arrival at the Steel Tower. Moreover, there is no evidence to support Claimant's assertion that she is incapable of procuring her breakfast from any location outside the Steel Tower's basement food court.

Next, we review whether Claimant meets the criteria for compensation under the second circumstance outlined in Section 301(c)(1) and the *Slaugenhaupt* test. Claimant's injury is compensable if she can demonstrate that she was injured while on Employer's premises, that her presence was required by the nature of her

employment, and that she sustained injuries due to a condition of the premises or Employer's operation of the business. *Slaugenhaupt*, 376 A.2d at 273.

Claimant argues that her pre-shift duties and responsibilities required her presence at the location where she was injured, and completion of these duties and responsibilities necessitated Claimant's pre-shift purchase of breakfast in the basement food court. Claimant contends that her uncontroverted testimony, which the WCJ accepted, established that her presence on the premises was both required by, and beneficial to, Employer.

Based on the evidence presented, and the relevant legal authority, the WCJ correctly concluded that Claimant was "arguably" on Employer's premises at the time she fell,[4] thus fulfilling the first prong of the *Slaugenhaupt* test. Employer has not disputed that Claimant was on the Steel Tower's ground-floor lobby level at the time she fell, and the WCJ accepted Claimant's uncontroverted testimony that her cubicle is located on the 37th floor, which is reached by a bank of elevators located behind a security checkpoint on the lobby's second floor. The second-floor lobby level is accessed by means of a ground-floor escalator. Employer's ownership or control over these common areas is not relevant, as an employer's premises under Section 301(c)(1) of the Act is not limited to property that the employer legally owns or controls; it includes "a reasonable means of ingress to or egress from the workplace." *Bockelman*, 221 A.3d at 176. Clearly, the ground-floor lobby level constitutes a reasonable, if not the only, means of ingress and egress to Employer's workplace on the 37th floor of the Steel Tower.

---

[4] There is no dispute Claimant was on the ground floor of the Steel Building lobby at the time she fell. Claimant testified that her access to the second-floor lobby level – and the upper-floor elevators – was by means of the upstairs escalator on the ground floor. An employer's premises includes reasonable means of access to the workplace, whether or not the employer owns the land. *Bockelman*, 221 A.3d at 176.

8

Claimant argues that the second prong of the *Slaugenhaupt* test is also satisfied by her unrebutted, credited testimony that she was present on Employer's premises within a reasonable time prior to the start of her 8:00 a.m. shift. Claimant asserts that her reason for being at the location where she sustained her injury is irrelevant, given the proximity in time between her 7:30 a.m. arrival at the Steel Tower and the anticipated commencement of her pre-shift duties 15 minutes later.

Employer contends that Claimant's situation is controlled by *Morris v. Workers' Compensation Appeal Board (Walmart Stores, Inc.)*, 879 A.2d 869, 871 (Pa. Cmwlth. 2005), in which this Court upheld a WCJ's denial of benefits for an injury the claimant sustained while shopping at her employer's store prior to the start of her shift. The claimant argued her injury was compensable because she intended to use her employee discount when finalizing her purchases. We disagreed, as the claimant's use of her employee discount was not contingent upon shopping at her employer's store. *Id.* at 872. Indeed, nothing relative to the claimant's work duties mandated that she limit her shopping to an employer-owned store or that she use her employee discount at all. *Id.*

We must reject Employer's argument, as the claimant in *Morris* arrived at her workplace in the early afternoon and her shift was not expected to begin for several hours. *Id.* at 870. These facts render *Morris* distinguishable from the instant matter, as Claimant's credited testimony places her on Employer's premises 15-30 minutes prior to the start of her shift. The other matters relied on by Employer are similarly distinct. In *Giebel v. Workmen's Compensation Appeal Board (Sears, Roebuck & Co.)*, 399 A.2d 152 (Pa. Cmwlth. 1979), the claimant fell while shopping during her lunch hour in a retail store operated by her employer. We upheld a WCJ's decision denying her benefits under the Act because the claimant was not required by the

9

nature of her employment to be in the retail store, which was located in a different part of the building than her workspace. *Grice v. Workers' Compensation Appeal Board (Shop Rite)* (Pa. Cmwlth., No. 449 C.D. 2009, filed July 28, 2009), an unpublished opinion of this Court, concerned a claimant who fell when picking up a purchase from her employer's seafood department. This Court recognized that the claimant sustained her injury shortly after she had clocked out from her shift. *Id.* slip op. at 1-2, 5. However, the claimant was on a personal errand in an area where her presence was not required by the nature of her employment and the accident did not occur on a pathway toward the store's entrance. *Id.* at 5.

We reached a contrary conclusion in *Wegmans Food Markets, Inc. v. Workers' Compensation Appeal Board (Tress)* (Pa. Cmwlth., No. 1343 C.D. 2017, filed October 10, 2018).[5] The *Wegmans* claimant fell while exiting her employer's premises shortly after her shift ended. *Id.*, slip op. at 1. After clocking out, the claimant walked towards a café located inside the employer's premises to pick up a takeout order. *Id.* Thereafter, the claimant intended to exit the store but slipped and fell prior to reaching the café. *Id.* at 1-2. Although her shift had ended, and she was therefore not required by her job duties to be in the location where she fell, the claimant slipped in a part of the store that she passed through when required to clock out at the end of a shift. *Id.* at 1.

We recognized that benefits were generally denied for claimants who were either on the employer's premises for non-work purposes for an extended period prior to the start of a shift or who engaged in significant non-work activity while already on a break. *Id.* at 4. The "intent to perform a brief personal errand,"

---

[5] Pursuant to Section 414(a) of this Court's Internal Operating Procedures, we may cite an unreported opinion of this Court for its persuasive value. 210 Pa. Code § 69.414(a).

10

however, did not remove the *Wegmans* claimant from the scope of her employment, and we affirmed her receipt of disability benefits under the Act. *Id.*

Instantly, although we cannot fault the WCJ's conclusion that Claimant's intended breakfast purchase constituted a "wholly personal errand," C.R., Item No. 5, C.O.L. No. 3, we are nevertheless constrained to reverse the Board, as controlling precedent holds that an injury is compensable under the Act if it is sustained on the employer's premises at a time that is reasonably proximate to her work hours. *Epler*, 393 A.2d at 1165. Claimant's arrival at the Steel Tower lobby 15-30 minutes prior to the start of her shift is a reasonable time, during which we must consider her to be advancing Employer's business. *Allegheny Ludlum Corp.*, 913 A.2d at 349. Although Claimant was clearly not required by her duties to purchase breakfast in the basement of the Steel Tower, she had to pass through the area in which she fell to reach the upstairs escalator and access her workspace on the 37th floor. As the WCJ acknowledged, "but for her work" for Employer, Claimant would likely not have been in the Steel Tower on the day she was injured. C.R., Item No. 5, C.O.L. No. 5. Given these facts, we are obligated to conclude that Claimant met the second prong of the *Slaugenhaupt* test.

While the WCJ made no findings regarding whether Claimant's injuries were caused by a condition of Employer's premises, Claimant's unrebutted testimony establishes that she fell after tripping over an unknown object on the Steel Tower lobby floor. This satisfies the third prong of the *Slaugenhaupt* test.

### III. Conclusion

Having fulfilled the requirements established in *Slaugenhaupt*, Claimant has shown that she sustained injuries while in the course and scope of her employment under Section 301(c)(1) of the Act. We therefore reverse the Board and remand this

matter for further remand to the WCJ. After remand, the WCJ shall make the findings of fact and conclusions of law necessary to determine whether Claimant was disabled by her August 15, 2018 work injury and, if so, the amount of workers' compensation benefits to which she is entitled.

_____
ELLEN CEISLER, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kathleen Lombardi, :
        Petitioner :
  :
    v. : No. 208 C.D. 2020
  :
Workers' Compensation :
Appeal Board (UPMC :
Health Plan, Inc.), :
        Respondent :

## **O R D E R**

AND NOW, this 27th day of October, 2021, the January 28, 2020 order of the Workers' Compensation Appeal Board (Board) is hereby REVERSED, and this matter is remanded to the Board for further remand to the workers' compensation judge, who shall make findings of fact and conclusions of law consistent with the foregoing opinion.

Jurisdiction is relinquished.

_____
ELLEN CEISLER, Judge