IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Kimberly Long, | : |
|            Petitioner | : |
| | :   No.  561 C.D. 2022 |
|     v. | : |
| | :   Submitted: February 3, 2023 |
| Northeast Counseling Services | : |
| (Workers' Compensation | : |
| Appeal Board), | : |
|            Respondent | : |

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE STACY WALLACE, Judge

***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                FILED: August 30, 2023

       In this workers' compensation (WC) case, Petitioner Kimberly Long (Claimant) petitions for review of the May 16, 2022 Opinion and Order of the Workers' Compensation Appeal Board (Board), which affirmed the August 27, 2021 Decision and Order of Workers' Compensation Judge (WCJ) Eric Pletcher (WCJ Pletcher). WCJ Pletcher granted the Petition to Modify Compensation Benefits (Modification Petition) filed by Respondent Northeast Counseling Services (Employer) and modified Claimant's WC benefit status from total to partial based on an Impairment Rating Evaluation (IRE) performed on September 16, 2020. At issue in this appeal, fundamentally, is whether Section 306(a.3) of the Workers' Compensation Act (WC Act),[1] also known as Act 111, constitutionally may be applied to Claimant's injury and associated receipt of WC benefits. Upon review, we affirm the Board.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*. Section 306(a.3) was added by the Act of October 24, 2018, P.L. 714, No. 111 (Act 111), 77 P.S. § 511.3.

## I. FACTS AND PROCEDURAL HISTORY

The material facts involved in this appeal are not disputed. On April 14, 2015, Claimant suffered a cervical strain, bilateral wrist sprain, right arm sprain, and left shoulder sprain when she tripped over a rug and fell down several concrete steps while in the course and scope of her employment with Employer. (WCJ Pletcher Findings of Fact (FOF) 2, 7; Reproduced Record (R.R.) at 003-4.) Pursuant to a Notice of Compensation Payable (NCP), Claimant received temporary total disability (TTD) benefits. (Certified Record (C.R.) Document (Doc.) No. 2.)[2] By Decision and Order circulated on December 17, 2019, WCJ Joseph Sebastianelli found Claimant to be fully recovered from her cervical strain, bilateral wrist sprain, right arm sprain, and left shoulder sprain. (FOF 2; R.R. at 003.) Claimant nevertheless continued to receive TTD benefits due to an ongoing closed-head injury, concussion, post-concussive syndrome, vestibular abnormality, and aggravation of cervical spondylosis. *Id.*

On September 16, 2020, Dr. Kenneth Gentilezza performed an IRE of Claimant pursuant to Section 306(a.3) of the WC Act. Based on his evaluation, Dr. Gentilezza concluded that, under the Sixth Edition, second printing of the American Medical Association Guides to the Evaluation of Permanent Impairment (AMA Guides), Claimant had a 26% whole-person impairment. (FOF 17; R.R. at 006.) WCJ Pletcher credited Dr. Gentilezza's opinions, which Claimant did not contest,[3] and accordingly granted Employer's Modification Petition and reduced Claimant's WC benefit status from TTD to temporary partial disability (TPD) as of September 16,

---

[2] Claimant included in her Reproduced Record only the WCJ's and Board's decisions. We therefore cite to the Certified Record from the Board as necessary to summarize the facts.

[3] Claimant did not present any evidence before the WCJ and made only legal arguments challenging the constitutionality of Act 111. (FOF 5; R.R. at 003.)

2020. (FOF 19; WCJ Pletcher Conclusion of Law 2; R.R. at 006, 007.) Claimant appealed to the Board, again arguing that Act 111 is unconstitutional. The Board affirmed, and Claimant now petitions for review in this Court.

## II. ISSUES PRESENTED

Claimant presents a single, overarching issue for our review, namely, whether Act 111 may constitutionally be applied to her injury, which occurred before Act 111's effective date. She argues, as she did before WCJ Pletcher and the Board, that retroactive application of Act 111 violates due process and the Remedies Clause of the Pennsylvania Constitution.[4] Although she acknowledges that this Court rejected these very arguments in *Pierson v. Workers' Compensation Appeal Board (Consol Pennsylvania Coal Co.)*, 252 A.3d 1169 (Pa. Cmwlth. 2021), she nevertheless argues that our analysis in *Pierson* and similar unreported cases is "deeply flawed" and that Act 111 should be invalidated. (Claimant's Br. at 17.)

## III. DISCUSSION[5]

On September 18, 2015, approximately five months after Claimant's injury, this Court issued its decision in *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 124 A.3d 406 (Pa. Cmwlth. 2015) *(Protz I)*, *affirmed in part and reversed in part*, 161 A.3d 827 (Pa. 2017) *(Protz II)*, declaring former Section

---

[4] The Remedies Clause provides, in pertinent part, that "[a]ll courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial, or delay. . . ." Pa. Const. art. I, § 11.

[5] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Phoenixville Hospital v. Workers' Compensation Appeal Board (Shoap)*, 81 A.3d 830, 838 (Pa. 2013). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *City of Philadelphia v. Workers' Compensation Appeal Board (Kriebel)*, 29 A.3d 762, 769 (Pa. 2011).

3

306(a.2) of the WC Act[6] void in its entirety.  In *Protz II*, the Pennsylvania Supreme Court held that the General Assembly, in authorizing the application of future versions of the AMA Guides without review, had unconstitutionally delegated its lawmaking authority in violation of the non-delegation doctrine.[7]  161 A.3d at 840-41.  The Court invalidated Section 306(a.2) in its entirety.

On October 24, 2018, in response to *Protz II*, the General Assembly passed Act 111, which replaced former Section 306(a.2) of the Act with Section 306(a.3).  Section 306(a.3) reads in relevant part:

> (1) When an employe has received total disability compensation pursuant to clause (a) for a period of one hundred four weeks . . . the employe shall be required to submit to a medical examination . . . to determine the degree of impairment due to the compensable injury, if any.  The degree of impairment shall be determined based upon an evaluation by a physician . . . pursuant to the [Sixth Edition, second printing of the AMA Guides].

---

[6] Section 306(a.2), *formerly* 77 P.S. § 511.2, was repealed by Act 111 and replaced by Section 306(a.3).  Section 306(a.2) provided, in pertinent part, as follows:

> When an employe has received total disability compensation pursuant to clause (a) for a period of [104] weeks . . . the employe shall be required to submit to a medical examination . . . to determine the degree of impairment due to the compensable injury, if any . . . .  The degree of impairment shall be determined based upon an evaluation by a physician . . . pursuant to the most recent edition of the [AMA Guides] . . . (2) If such determination results in an impairment rating that meets a threshold impairment rating that is equal to or greater than [50%] . . . the employe shall be presumed to be totally disabled and shall continue to receive total disability compensation benefits. . . . If such determination results in an impairment rating less than [50%] impairment . . . the employe shall then receive partial disability benefits under class (b) . . . .

*Former* 77 P.S. § 511.2.

[7] Pa. Const. art. II, § 1 ("The legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives.").

(2) If such determination results in an impairment rating that meets a threshold impairment rating that is equal to or greater than [35%] . . . , the employe shall be presumed to be totally disabled and shall continue to receive total disability compensation benefits . . . . If such determination results in an impairment rating less than [35%] impairment . . . , the employe shall then receive partial disability benefits under class (b) . . . .

77 P.S. § 511.3. Section 3 of Act 111 further provides, in pertinent part, as follows:

(1) For the purposes of determining whether an employee shall submit to a medical examination to determine the degree of impairment and whether an employee has received total disability compensation for the period of 104 weeks under [S]ection 306(a.3)(1) of the [WC A]ct, an insurer shall be given credit for weeks of total disability compensation paid prior to the effective date of this paragraph. This section shall not be construed to alter the requirements of section 306(a.3) of the [WC A]ct.

(2) For the purposes of determining the total number of weeks of partial disability compensation payable under [S]ection 306(a.3)(7) of the [WC A]ct, an insurer shall be given credit for weeks of partial disability compensation paid prior to the effective date of this paragraph.

77 P.S. § 511.3, Historical and Statutory Notes.

In *Pierson*,[8] the claimant sustained a work-related injury on August 13, 2014. 252 A.3d at 1171. The employer acknowledged the injury via an NCP, and the claimant received TTD benefits. *Id.* at 1171-72. On December 21, 2018, the employer filed a modification petition pursuant to newly-enacted Section 306(a.3) seeking to change the claimant's benefits from TTD to partial disability based on an IRE

---

[8] Although *Pierson* initially was filed as an unpublished memorandum, on application of the Pennsylvania Bar Association Workers' Compensation Law Section, we ordered publication on April 26, 2021. *See* Pa. R.A.P. 3740.

performed on December 19, 2018. *Id.* at 1172. The claimant lodged constitutional challenges to Section 306(a.3) before both the WCJ and the Board, both of which declined to address the challenges. *Id.*[9] On appeal to this Court, the claimant argued that (1) Section 306(a.3) is unconstitutional "on its face," and (2) Section 306(a.3) cannot be applied retroactively to claims that originated (i.e., have an injury date) prior to October 24, 2018, the effective date of the new IRE mechanism. *Id.* at 1174. The claimant further argued that Act 111 involved a change in substantive law, that *Protz II* invalidated any IRE mechanism that could apply to his claim, and that the application of Act 111 to his claim retroactively violates vested rights specifically secured by due process and the Remedies Clause of the Pennsylvania Constitution. *Id.* at 1174-76.

We rejected the claimant's arguments, relying chiefly on our prior decisions in *Pennsylvania AFL-CIO v. Commonwealth*, 219 A.3d 306 (Pa. Cmwlth. 2019), and *Rose Corporation v. Workers' Compensation Appeal Board (Espada)*, 238 A.3d 551 (Pa. Cmwlth. 2020). Because our analysis in *Pierson* is controlling here, we quote it at length:

> In [*Pennsylvania AFL-CIO*], we determined [that] Act 111 was not an unconstitutional delegation of legislative authority, as the prior IRE provision of the [WC] Act was determined to be. . . . Our opinion in *Pennsylvania AFL-CIO* was affirmed by a brief *per curiam* order of our Supreme Court. . . . Although we acknowledge that the determination in *Pennsylvania AFL-CIO* was relative to whether Act 111 was an unconstitutional delegation of legislative authority, it was nevertheless a test of [the] [ ] assertion that Act 111 is unconstitutional "on its face," and the consensus was that it is not. . . .
>
> In addition, and in regard to the issue of the retroactive application of the 104-week and credit provisions of Act 111, we

---

[9] The claimant in *Pierson* also challenged the credibility of the physician performing the subject IRE, an issue not before us in this appeal.

first address [the] [ ] contention that *Protz II* rendered former Section 306(a.2) of the Act void *ab initio* . . . .

In [*Warren v. Folk*, 886 A.2d 305 (Pa. Super. 2005)], the Pennsylvania Superior Court explained that it, and our Supreme Court, had considered the issue of retroactivity in terms of whether the statute in question affects vested rights and determined that

> [w]here no vested right or contractual obligation is involved, an act is not retroactively construed when applied to a condition existing on its effective date even though the condition results from events prior to that date. . . . A "vested right" is one that "so completely and definitely belongs to a person that it cannot be impaired or taken away without the person's consent."

While [the] [c]laimant, here, argues that he has a right to benefits as calculated at the time of injury, there are reasonable expectations under the [WC] Act that benefits may change. We acknowledge that a claimant retains a certain right to benefits until such time as he is found to be ineligible for them. However, claimants, such as the one in the matter before us, did not automatically lose anything by the enactment of Act 111. Act 111 simply provided employers with the means to change a claimant's disability status from [TTD] to [TPD] by providing the requisite medical evidence that the claimant has a whole[-]body impairment of less than 35%, after receiving 104 weeks of TTD benefits.

As this Court opined in *Rose Corporation*, the General Assembly made it clear in [Section 3 of] Act 111 that weeks of TTD and partial disability paid by an employer/insurer prior to the enactment of Act 111 count as credit against an employer's new obligations under Act 111. In *Rose Corporation*, we said, in reference to Act 111:

> The plain language of Section 3 establishes a mechanism by which employers/insurers may receive credit for weeks of compensation previously paid. First, Section 3(1) provides that an

7

employer/insurer "shall be given credit for weeks of total disability compensation paid prior to the effective date of this paragraph" for purposes of determining whether the 104 weeks of total disability had been paid. This 104 weeks is important because, under both the former and current IRE provisions, a claimant need not attend an IRE until after the claimant receives 104 weeks of total compensation. 77 P.S. § 511.3(1); *former* 77 P.S. § 511.2(1). *See* Section 3(1) of Act 111. Therefore, pursuant to Section 3(1), an employer/insurer will receive credit towards this 104 weeks for any weeks of [TTD] benefits that were previously paid prior to Act 111's enactment. Second, an employer/insurer will be given credit for any weeks of partial disability compensation paid prior to enactment of Act 111 "for the purposes of determining the total number of weeks of partial disability compensation payable under Section 306(a.3)(7) of the WC Act." Section 3(2) of Act 111. In short, any weeks of partial disability previously paid will count towards the 500-week cap on such benefits.

[*Rose Corporation*], 238 A.3d at 561-62. [W]e also added: "Through the use of very careful and specific language, the General Assembly provided employers/insurers with credit for the weeks of compensation, whether total or partial in nature, previously paid." [*Id.*] at 562.

. . . .

[The] [c]laimant, herein [ ] argues that the General Assembly cannot take away his "vested rights" and that it did not explicitly express an intent to apply the provisions of Act 111 in any sort of a retroactive fashion. As we noted above, [the] [c]laimant's "vested rights" have not been abrogated by Act 111. Further, we believe it is clear that the General Assembly intended for the 104-week and credit weeks provisions of Act 111 to be given retroactive effect, where, as we noted in *Rose Corporation*, it stated in plain language it was doing so. Thus, [the c]laimant

8

does not prevail in his arguments relative to the constitutionality of Act 111, and we see no reason to disturb the Board's Order affirming the WCJ.

*Id.* at 1178-80. *See also DiPaolo v. UPMC Magee Women's Hospital (Workers' Compensation Appeal Board)*, 278 A.3d 430, 432-38 (Pa. Cmwlth. 2022), *appeal denied*, 290 A.3d 237 (Pa. 2003).

Claimant argued throughout the proceedings before WCJ Pletcher and the Board only that Act 111 is unconstitutional. She does not challenge WCJ Pletcher's determination on any other grounds. Because this case is controlled by *Pierson*, which we again reaffirm, we must conclude that Claimant's arguments are without merit. We accordingly affirm the Board.[10]

_____
PATRICIA A. McCULLOUGH, Judge

---

[10] Although Claimant argues in her brief that the language of Act 111 does not clearly indicate that it is to be applied retroactively, *see* Claimant's Br. at 21-23, she did not preserve this before the Board. *See* C.R. Doc. 5. It accordingly is waived. *Starr Aviation v. Workers' Compensation Appeal Board (Colquitt)*, 155 A.3d 1156, 1162 (Pa. Cmwlth. 2017) (where a claimant has failed to raise an issue in any manner before the Board, the issue is waived). Further, even if the issue were not waived, Claimant's arguments are foreclosed by *Pierson*, where we concluded that Act 111 clearly was intended by the General Assembly to have retroactive application. *See Pierson*, 252 A.3d at 1179-80.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kimberly Long, : 
         Petitioner :

: No. 561 C.D. 2022

         v. :

:

Northeast Counseling Services :
(Workers' Compensation :
Appeal Board), :
         Respondent :

## *__ORDER__*

AND NOW, this 30th day of August, 2023, the May 16, 2022 order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge